**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL and KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC AT THE BENJAMIN N. CARDOZO SCHOOL OF LAW, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW and U.S. DEPARTMENT OF JUSTICE, <br><br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel the Executive Office for Immigration Review ("EOIR"), a component of the U.S Department of Justice ("DOJ"), to immediately release records containing information about its policies and practices for adjudicating motions for stays of removal filed in conjunction with motions to reopen or reconsider final orders of removal.  Such motions serve as critical mechanisms to prevent the devastating—and at times life-threatening—consequences of unlawful or unjust deportations.

2.      While these mechanisms have long played an important role in our immigration system, their availability has become especially critical in the wake of the increased and aggressive immigration enforcement that has characterized the Trump Administration.  Beginning in early 2017, U.S. Immigration and Customs Enforcement ("ICE") began to apprehend, detain, and attempt to quickly deport large numbers of people who had been ordered removed many years ago, but continued to reside in the United States, frequently with the federal government's permission.

1

Given the often significant period of time that has elapsed since the issuance of these removal orders, subsequent changes in immigration law, and changed conditions in their countries of origin, many individuals subject to the old removal orders now have new bases to reopen their removal proceedings, including meritorious claims for persecution-based relief.

3.     The U.S. immigration regime provides mechanisms to prevent unlawful deportations, including in cases where noncitizens previously ordered removed now face potential persecution or torture in their countries of origin: noncitizens have the statutory right to move EOIR to reopen or reconsider their cases and an administrative right to seek a stay of deportation pending adjudication of their motion to reopen or reconsider.  These longstanding legal avenues for temporarily delaying or preventing deportation exist for a critically important reason: to prevent the worst consequences of deportation for people who qualify for protection, have a newly acquired basis to remain in the country, or whose removal order resulted from an unlawful process.

4.     However, EOIR's current practices often render these mechanisms meaningless for noncitizens and the attorneys who represent them.  Operating in total opacity, EOIR routinely denies stay requests with no explanation, at the eleventh hour, and in ways that functionally deny noncitizens their statutory right to seek a judicial stay of removal in conjunction with a petition for review of a final decision on their motion in federal court.  As a consequence, noncitizens are frequently deported to countries where they face persecution, and, all too often, subsequently prevented from vindicating their rights through the motion to reopen process from outside the country.

5.     Given the uptick in enforcement against longtime immigrant communities, there is an urgent need to inform the public about EOIR's policies and practices with respect to motions to stay the execution of removal orders filed in conjunction with motions to reopen.  EOIR has

repeatedly refused to make public this critical information that is necessary to (1) allow the public, including courts, to assess the degree to which the filing of a stay motion and motion to reopen comports with individuals' constitutional, statutory, and regulatory rights; and (2) provide guidance for noncitizens and their attorneys to make informed decisions about how to proceed in cases with extremely fast timelines where failing to prevent deportation would expose a noncitizen to imminent persecution and irreparable harm, particularly where the practice of the Board of Immigration Appeals ("BIA")[1] differs from what little stated policy guidance is publicly available.

6.     For these reasons, Plaintiffs American Immigration Council and the Kathryn O. Greenberg Immigration Justice Clinic at the Benjamin N. Cardozo School of Law (hereinafter "the Plaintiffs") submitted two FOIA requests to EOIR seeking records and data that reflect EOIR's current policies and practices regarding motions for a stay of removal and motions to reopen or reconsider removal orders.  The first FOIA request was filed on July 17, 2018, and the second was filed on November 19, 2018.  Months later and despite diligent administrative advocacy by the Plaintiffs, EOIR has refused to adequately search for or produce the vast majority of the requested records.  As a result, clear guidance on ways to effectively exercise these statutory and regulatory rights remain unclear, to the detriment of noncitizens, their attorneys, and courts.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(C)(i), (a)(6)(E)(iii).  Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.     Venue lies in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

---

[1] The Board of Immigration Appeals is the tribunal responsible for appellate adjudication within EOIR.  *See* 8 C.F.R. § 1003.0(a).

9.     This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii), 28 U.S.C. §§ 2201–2202 and Federal Rules of Civil Procedure 57 and 65.

10.     The Plaintiffs have exhausted any and all administrative remedies in connection with these FOIA requests.

## PARTIES

11.     Plaintiff American Immigration Council ("the Council") is a tax-exempt, not-for-profit educational and charitable organization under Section 501(c)(3) of the Internal Revenue Code, with its principal place of business at 1331 G Street NW, Suite 200, Washington, D.C. 20005.  Founded in 1987, the Council works to increase public understanding of immigration law and policy, advocate for the fair and just administration of our immigration laws, protect the legal rights of noncitizens, and educate the public about the enduring contributions of America's immigrants.  Through its research and analysis, the Council has become a leading resource for policymakers and opinion makers at the national, state, and local levels who seek to understand the power and potential of immigration and to develop policies that are based on facts rather than myths.  The Council also seeks, through court action and other measures, to hold the government accountable for unlawful conduct and restrictive interpretations of the law and for failing to ensure that the immigration laws are implemented and executed in a manner that comports with due process.

12.     Plaintiff Kathryn O. Immigration Justice Clinic ("the Clinic") is an educational and advocacy not-for-profit legal practice based at the Benjamin N. Cardozo School of Law, with its office and principal place of business at 55 Fifth Avenue, Floor 11, New York, New York 10003.  The Clinic was founded in 2008 to provide pro bono legal representation to indigent immigrants

facing deportation, as well as community-based organizations, in both public policy and litigation efforts.  In carrying out this work in the interests of its individual clients and the public, the Clinic has established itself as a leader in the dissemination of critically important information about immigration enforcement operations and access to justice to the public.  The Clinic frequently obtains and analyzes data from government agencies and publishes studies and evaluations to educate the public about the way that the U.S. immigration enforcement and adjudication systems function.  The Clinic disseminates these materials by publishing them on websites and in print publications, circulating them on listservs, and sharing them with the media.

13.    Defendant U.S. Department of Justice ("DOJ") is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1).

14.    Defendant Executive Office for Immigration Review ("EOIR") is a subcomponent of DOJ, 8 C.F.R. § 1003.0(a), and an agency within the meaning of 5 U.S.C. § 552(f)(1).  EOIR is comprised of Immigration Courts and the BIA.  *See* 8 C.F.R. § 1003.0(a).

15.    Defendants have custody and control over the records the Plaintiffs seek to have made publicly available under 5 U.S.C. § 552(a)(2).

## STATEMENT OF FACTS

**INCREASE IN INTERIOR IMMIGRATION ENFORCEMENT**

16.    Since early 2017, immigration enforcement against noncitizens residing in the United States has increased over 40 percent and continues to rise.  As part of this shift, ICE began to conduct raids—mass-scale arrests—more frequently in immigrant communities.

17.    Many of the individuals arrested in these raids and other enforcement actions have years-old deportation orders, but subsequently have resided in the United States with the federal government's permission.  During the time that has elapsed since they were ordered deported,

many have gained new bases for regularizing their immigration status.  In some cases, that is due to changes in immigration law or their familial structure; in other cases, these individuals newly qualify for persecution-based relief from deportation because of changed conditions in their country of origin that now make it dangerous—potentially life-threatening—for them to return to those countries if they were deported.

18.     ICE does not, however, screen individuals for new bases for relief, including fear of persecution, when it arrests individuals with prior removal orders.  Nor does the agency provide individuals with attorneys or options for presenting these new bases for relief.  Rather, ICE generally moves to execute the removal order and deport the person to his or her country of origin, irrespective of an individual's right to relief or protection unless and until a court orders otherwise.

19.     As a result, individuals with years- or decades-old removal orders and meritorious claims for relief—including asylum—have been deported to circumstances where they now face danger or even death.

**STATUTORY AND REGULATORY MECHANISMS FOR PROTECTING AGAINST IMMEDIATE DEPORTATION**

20.     The Immigration and Nationality Act and accompanying regulations codify mechanisms to protect individuals who have bases to reopen their removal proceedings and protections for those who would be irreparably harmed if they are deported.

21.     Specifically, this legal regime grants noncitizens with prior removal orders the right to seek to reopen their removal proceedings by filing a motion to reopen or a motion to reconsider their prior order of removal.  A motion to reopen authorizes an Immigration Judge ("IJ") or the BIA to vacate an existing removal order based on new and previously unavailable evidence, such as proof of potential persecution.  *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. §§ 1003.2(c), 1003.23(b)(3).  Motions to reconsider, on the other hand, constitute a mechanism for individuals

6

to vacate an existing order based on errors of law or fact in a previous decision.  *See* 8 U.S.C. § 1229a(c)(6)(C).

22.     The process of filing either a motion to reopen or a motion to reconsider is demanding and complicated.  The statute and regulations require that motions to reopen, for example, be accompanied by a substantial amount of new evidence, 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2(c), 1003.23(b)(3), which takes significant effort to gather and assemble. Motions to reconsider must demonstrate error in the tribunal's previous decision, 8 C.F.R. § 1003.2(b), which often requires significant research.

23.     Remaining in the United States is crucial for individuals to adequately prepare such motions to reopen or reconsider.  That is because, once deported, individuals, even those with meritorious claims, are less likely to have access to legal assistance, legal resources, and evidence located in the United States, all of which are often critical to reopening a case.

24.     Moreover, after an individual has been deported, he or she may fall victim to the feared persecution.  Further, it is extremely difficult to successfully litigate a motion to reopen or a reopened case from outside of the United States, or, even if successful, return to the United States, as individuals are often in hiding and unable to communicate with their attorney or others in the United States.

25.     Therefore, to ensure that noncitizens do not experience irreparable harm while a bona fide motion to reopen or reconsider is pending at the BIA, noncitizens may also seek a stay of removal pending adjudication of such a motion.  *See* 8 C.F.R. §§ 1003.2(f); 1003.23(b)(1)(v).[2]

---

[2] Deportation is automatically stayed only in two narrow types of motions: (1) a motion to rescind an *in absentia* removal or deportation proceeding is pending at the immigration court, *see* 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. §§ 1003.23(b)(4)(ii) (for removal proceedings); 1003.23(b)(4)(iii)(C) (for deportation proceedings); and (2) a motion filed by a qualified battered spouse, child or parent pursuant to 8 U.S.C. § 1229a (c)(7)(C)(iv) is pending.

If—and only if—the motion for a stay is granted, the noncitizen will not be deported while the motion to reopen or reconsider is pending.

26.     A stay of removal is, moreover, often essential to allow the noncitizen to remain in the United States in order to pursue the statutory right to present one's claims.  By statute, noncitizens have a right to seek federal court review of the denial of a motion to reopen or a motion to reconsider by filing a petition for review in the relevant court of appeals.  8 U.S.C. §§ 1252(a)(1), (b)(6).  Absent a stay of removal from EOIR, noncitizens may be deported to their countries of origin before they can avail themselves of their sole opportunity for federal court review of their claims.

27.     In order to prevent irreparable harm while the court of appeals is considering the petition for review, noncitizens may seek—and often obtain—a stay of removal from the court of appeals.  8 U.S.C. § 1252(f).  Indeed, recognizing the nature of the harm that deportation signifies, some federal courts grant automatic stays of removal when a person files a stay motion in conjunction with a petition for review, at least until the court of appeals can receive briefing and decide the merits of the stay motions.[3]

28.     If however, the BIA denies a noncitizen's stay of removal and the noncitizen is subsequently deported before a motion to reopen or reconsider is adjudicated, the noncitizen risks imminent persecution, injury, and even death before having the opportunity to seek federal court review.  Therefore, if a noncitizen does not receive a stay of removal from EOIR while in the country, any subsequent relief from the federal courts is too late.

---

[3] *See, e.g.*, *In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for the Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012); 1ST CIR. LOCAL R. 18.0; UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, STANDING ORDER REGARDING IMMIGRATION CASES (Aug. 5, 2015); 9TH CIR. GENERAL ORDER 6.4(c)(1).

29.     Thus, timely and fair adjudication of motions to stay deportation filed in conjunction with motions to reopen or reconsider ensures that noncitizens are not irreparably harmed as a result of deportation without having a meaningful opportunity to present their claims.

30.     For all of these reasons, motions for stays of removal and motions to reopen or reconsider play critical roles in our nation's immigration system.

**DEFICIENCIES IN EOIR STAY PROCESS & CONSEQUENCES**

31.     Despite the well-recognized importance of the mechanisms described above, there are significant problems with EOIR's practices surrounding stay requests filed in conjunction with these motions.

32.     First, EOIR has no publicly available guidance regarding the standard that immigration judges and the BIA apply in adjudicating motions for a stay of removal.  The lack of guidance prevents litigants, courts, and the public from understanding its practices.  Further, this lack of guidance prevents litigants, especially those who are pro se, from understanding how they can avail themselves of this mechanism for protection.

33.     Second—and relatedly—EOIR routinely issues conclusory orders in deciding motions for stays of removal that prevent litigants, courts, and the public from understanding or meaningfully reviewing the reasoning underlying its decisions or the standards it applies.

34.     Because EOIR fails to articulate a standard for how it decides stay requests, it is unclear what factors it considers or how much weight is placed on each factor.  Therefore, without clear, public guidance on the stay standard applied, litigants and their advocates, and especially pro se litigants, have no way of knowing whether their stay motions are adequately prepared or satisfy relevant factors.

35.     Third, EOIR has adopted a practice of adjudicating motions for stays of removal at the last minute.  While EOIR's published manual indicates that EOIR will consider non-emergency motions for stays of removal, in practice, EOIR only adjudicates time-sensitive stay motions when ICE confirms that the noncitizen is hours or sometimes minutes away from being put onto a plane. At that point, it is often too late for noncitizens or their attorneys to take further steps to prevent removal.  That is, even if EOIR has adjudicated the motion to reopen, the last-minute denial of the stay makes it practically impossible for a noncitizen to pursue the right to seek review in federal court.  At that point, it is too late to file a petition for review and seek a stay of removal from the court of appeals before the person is deported.

36.     Fourth, the BIA routinely denies stays without adjudicating the underlying motion to reopen or reconsider.  This practice of denying stay motions without adjudicating motions to reopen prevents noncitizens from seeking stays of removal from federal courts of appeals.[4]

37.     These deficiencies mean that individuals with bona fide claims for reopening or reconsidering their removal orders may be deported to countries where they face imminent persecution, injury, and even death before their motions to reopen are adjudicated by EOIR or reviewed by any federal court.

38.     The harmful consequences of these practices are all the more pervasive and apparent given increased immigration enforcement and rescission of the prosecutorial discretion guidance that prevented certain removals in the past.

---

[4] Without a final decision on a motion to reopen, noncitizens are unable to file a petition for review in the court of appeals pursuant to 8 U.S.C. § 1252(a)(1).

**PLAINTIFFS' FOIA REQUESTS AND DEFENDANTS' RESPONSES**

39.     In light of the deficiencies in EOIR's processes for adjudicating motions for stays of removal filed in conjunction with motions to reopen or reconsider and the government's increased enforcement against individuals with final orders of removal, the Plaintiffs sought records regarding the BIA's policies and practices for adjudicating stay requests by filing two FOIA requests.

**First FOIA Request**

40.     On July 17, 2018, the Plaintiffs submitted their first FOIA request to the EOIR ("First Request") for records related to motions for a stay of removal filed with the BIA in conjunction with a motion to reopen or motion to reconsider.  *See* Ex. A (First Request).

41.     The First Request sought records regarding motions to stay removal filed in conjunction with motions to reopen or reconsider that had been adjudicated in the fiscal years ("FY") 2015 through 2018.  *Id.* at 1.  Specifically, the First Request sought disclosure of records that, inter alia, would show the frequency with which the BIA grants each type of motion, the relationship between stay motions and motions to reopen or reconsider, and the timeline for adjudicating such motions.

42.     The Plaintiffs requested expedited processing in light of the devastating impact of new immigration enforcement practices on noncitizens, the urgent need for noncitizens and their attorneys to be able to make informed decisions about how to best proceed in their cases, and the importance of safeguarding the public interest by ensuring that the BIA is complying with its statutory, regulatory, and constitutional obligations.

43.     On July 18, 2018, the Plaintiffs received a letter acknowledging receipt of the Plaintiffs' FOIA request.  *See* Ex. B (First Letter Acknowledgment).  The letter indicated that the

Plaintiffs' request had been placed on the "second track for simple requests," rather than on the "first track" for requests that have received expedited processing, indicating that the Plaintiffs' request for expedited processing had been denied. *Id.*

44.     Nearly two months later, on September 7, 2018, the Plaintiffs received Defendants' response, the entirety of which was a single Excel spreadsheet containing certain "stay of removal data" that happened to be tracked by the BIA's Emergency Stay Unit. *See* Ex. C (Response Letter). The response did not contain, or explain the absence of, other records responsive to the Plaintiffs' request, nor did it indicate that any other databases, including EOIR's case management system, CASE, or files were searched for responsive records. *Id.*

45.     In the four months that followed, the Plaintiffs made diligent efforts to compel EOIR to produce the requested records.  Such efforts included multiple emails and at least two phone conversations with the assigned FOIA officer in an effort to resolve the issues at the administrative level.  However, these attempts were unsuccessful.  The agency continued to refuse to conduct an adequate search or, therefore, produce the remaining records.

**Appeal of Response to First FOIA Request**

46.     On November 15, 2018, the Plaintiffs timely appealed Defendants' inadequate response to the First Request. Ex. D (First Request Appeal Letter).

47.     The Plaintiffs' appeal explained that EOIR failed to conduct an adequate search "reasonably calculated to uncover all relevant documents" for records in response to the Plaintiffs' FOIA Request, as is required under 5 U.S.C. § 552(a)(3) or, therefore, comply with its statutory duty to produce all non-exempt records.  Ex.  D (First Request Appeal Letter) at 3–4.

48.     The Plaintiffs received no response or acknowledgement of the appeal for three months.  On February 14, 2019, the Plaintiffs received a determination on the appeal.  Ex. E (First

Request Appeal Decision). The decision affirmed EOIR's response, but did so on partly modified grounds not discussed in EOIR's initial determination. Specifically, it asserts that the Plaintiffs' request did not reasonably describe the records sought and that the search would be unduly burdensome, but neither discussed the detailed nature of the Plaintiffs' request nor the Plaintiffs' significant efforts to resolve the issue with the assigned FOIA officer. *Id.*

**Second FOIA Request**

49.     On November 19, 2018, the Plaintiffs submitted a second FOIA request to EOIR ("Second Request"). The Second Request, like the First Request, seeks records related to motions for a stay of removal filed with the BIA in conjunction with a motion to reopen or motion to reconsider. Ex. F (Second Request).

50.     The Second FOIA Request sought three categories of records: (1) records similar to those requested in the First FOIA Request, but for FY 2008 through FY 2014; (2) records reflecting EOIR's policies and procedures regarding its processing, recording, and tracking of motions for stays of removal filed in connection with a motion to reopen or motion for reconsideration filed with the BIA; and (3) a random sample of written decisions denying motions for a stay of removal.

51.     The Plaintiffs also sought expedited processing of the Second Request on the same basis as they did for the First Request.

52.     On November 29, 2018, the Plaintiffs received a letter dated November 21, 2018 acknowledging EOIR's receipt of the Plaintiffs' Second Request. *See* Ex. G (Second Letter Acknowledgment). As with the First Request, the letter indicated that the Plaintiffs' request had been placed on the "second track" rather than on the "first track" for expedited processing, which the Plaintiffs understood to mean that their request for expedited processing had been denied. *Id.*

53.     To date, EOIR has not provided any records pursuant to the Plaintiffs' Second Request.

## CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Conduct an Adequate Search for Responsive Records**

54.     The Plaintiffs repeat, allege and incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1–53 above.

55.     The Defendants are obligated under 5 U.S.C. § 552(a)(3)(C) to conduct a reasonable search for records responsive to the Plaintiffs' FOIA Requests.

56.     The Plaintiffs have a legal right to obtain such records, and no legal basis exists for the Defendants' failure to search for them.

57.     The Defendants' failure to conduct a reasonable search for records responsive to the Plaintiff's Requests violates, at a minimum, 5 U.S.C. § 552(a)(3)(C) and the regulations promulgated thereunder.

### SECOND CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Disclose Responsive Records**

58.     The Plaintiffs repeat, allege and incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1–53 above.

59.     The Defendants are obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to the Plaintiffs' FOIA requests and supplement thereto.

60.     The Plaintiffs have a legal right to obtain such records, and no legal basis exists for the Defendants' failure to disclose them.

61.     The Defendants' failure to disclose all responsive records violates, at a minimum, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder.

## THIRD CAUSE OF ACTION

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Respond within Time Required**

62.     The Plaintiffs repeat, allege and incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1–53 above.

63.     The Defendants are obligated under 5 U.S.C. § 552(a)(6)(A)(i) to promptly produce records responsive to the Plaintiffs' FOIA requests.  The Plaintiffs have a legal right to obtain such records, and no legal basis exists for the Defendants' failure to disclose them.

64.     The Defendants' failure to disclose all responsive records violates, at a minimum, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiffs respectfully pray for judgment against the Defendants as follows:

a.     Order the Defendants to expeditiously conduct an adequate search for all records responsive to the Plaintiffs' FOIA requests in accordance with 5 U.S.C. § 552(a)(3)(C);

b.     Declare that the Defendants' failure to disclose the records responsive to the Plaintiffs' request violates FOIA, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder;

c.     Declare that the Defendants' failure to promptly produce records responsive to the Plaintiffs' request violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

d.     Order the Defendants to expeditiously process and disclose all responsive, non-exempt records, and enjoin the Defendants from improperly withholding records;

e.      Award the Plaintiffs reasonable attorneys' fees and other litigation costs pursuant

to 5 U.S.C. § 552(a)(4)(E), and any other applicable statute or regulation; and

f.      Grant such other relief as the Court may deem just, equitable, and appropriate.

Respectfully Submitted,

Dated: February 27, 2019                  _/s/ Lindsay Nash_____
                                          Lindsay Nash
                                          Yael Ben Tov*
                                          Rikke Bukh*
                                          Geroline Castillo*
                                          Emily Lundgren*
                                          Kathryn O. Greenberg Immigration Justice Clinic
                                          Benjamin N. Cardozo School of Law
                                          55 Fifth Avenue, 11th Floor
                                          New York, NY 10003
                                          (212) 790-0433
                                          lindsay.nash@yu.edu

                                          Claudia Valenzuela**
                                          American Immigration Council
                                          1331 G Street NW, Suite 200
                                          Washington, DC 20005
                                          (202) 507-7540
                                          cvalenzuela@immcouncil.org

                                          Trina Realmuto
                                          Kristin Macleod-Ball***
                                          American Immigration Council
                                          1318 Beacon Street, Suite 18
                                          Brookline, MA 02446
                                          (857) 305-3600
                                          trealmuto@immcouncil.org
                                          kmacleod-ball@immcouncil.org

                                          * *Motion to Appear as Law Students forthcoming*
                                          ***Application for admission pro hac vice pending*
                                          ****Application for admission pending*

16