UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN IMMIGRATION COUNCIL;
KATHRYN O. GREENBERG IMMIGRATION
JUSTICE CLINIC AT THE BENJAMIN N.
CARDOZO SCHOOL OF LAW,

Plaintiffs,

-v-

EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW; U.S. DEPARTMENT OF JUSTICE

Defendants.

19-cv-01835-DLC

---

**DECLARATION OF JOSEPH R. SCHAAF IN SUPPORT OF UNITED STATES
DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

I, Joseph R. Schaaf, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Supervisory Attorney Advisor (FOIA) under the Office of the General

Counsel ("OGC") at the Executive Office for Immigration Review ("EOIR"). I have held this

position for approximately two-and-one-half years. In my role as Supervisory Attorney

Advisor (FOIA), I manage the agency's Freedom of Information Act Unit ("FOIA Unit") for

the agency. Prior to this position, I was a Judge Advocate in the United States Navy and held

the position of Staff FOIA Officer at various times from 1999 through 2016.

2.      The EOIR FOIA Unit is responsible for executing EOIR's FOIA Program

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act

("PA"), 5 U.S.C. § 552a.

3.      As the Supervisory Attorney Advisor (FOIA) overseeing the EOIR FOIA Unit, my

1

official duties and responsibilities include managing the EOIR FOIA Program, creating and

implementing policy and procedures for the EOIR FOIA Program, conducting FOIA training

for senior EOIR personnel, and processing complex FOIA requests.  In connection with my

official duties, I am familiar with EOIR's procedures for responding to requests for information

pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with the

FOIA request made by Plaintiff dated July 17, 2018 and assigned FOIA control number FOIA

2018-40697 (First Request) and the request made by Plaintiff dated November 19, 2018 and

assigned control number FOIA 2019-07902 (Second Request).

     4.     I make this declaration in support of EOIR's motion for summary judgment. The

statements contained in this declaration are based upon my personal knowledge, my review of

records kept by EOIR in the ordinary course of business, and information provided to me by

other EOIR employees in the course of my official duties.

## II.     DESCRIPTION OF EOIR'S FOIA PROGRAM

     5.     Historically, Simple requests comprise over 99% of FOIA/PA requests received

at the FOIA Service Center. In FY 2018, EOIR processed 44,216 Simple perfected requests[1]

and 310 Complex perfected requests. In FY 2017, EOIR processed 36,793 Simple perfected

requests and 143 Complex perfected requests. In FY 2016, EOIR processed 30,515 Simple

perfected requests and 136 Complex perfected requests. In FY 2015, EOIR processed 27,740

Simple perfected requests and 12 Complex perfected requests. *See*

https://www.justice.gov/oip/reports-1.

     6.     In FY 2018, the lowest number of days to process Complex requests was

---

[1] "Perfected" requests are those requests that are actually processed by the agency. "Requests" that are
received by the agency that are not "reasonably described" or are deemed "improper" for some other reason
are referred to as "unperfected" requests. Such "unperfected" requests are annotated by the agency in its
Annual Report, but these requests are closed without processing.

reported as less than one (1) day and the highest number of days was reported as 258 days with an average of 31.69 days. In FY 2017, the lowest number of days to process Complex requests was reported as four (4) days and the highest number of days was reported as 631 days with an average of 66.51 days. In FY2016, the lowest number of days to process Complex requests was reported as one (1) day and the highest number of days was reported as 1,096 days with an average of 98.36 days. In FY2015, the lowest number of days to process Complex requests was reported as eight (8) days and the highest number of days was reported as 637 days with an average of 238 days. *See* https://www.justice.gov/oip/reports-1.

7.     Processing of Complex (Track 3) requests widely varies based on numerous factors, including but not limited to: (1) the scope of the request; (2) the number of agency program offices (including field offices) likely to have responsive documents within the scope of the request that will be tasked to conduct a search; (3) the volume of potentially responsive records to review; (4) the sensitivity of records responsive to a request requiring multiple layers of review; (5) coordination with other agency components or other agencies for records in which these components or agencies have an equity interest (so-called "Consultations" and "Referrals"); (6) the FOIA pending request log; and (7) agency personnel and staffing.

8.     EOIR's FOIA Program for processing FOIA requests begins with the FOIA Service Center. When the FOIA Service Center receives a FOIA request, FOIA intake personnel log it in to an electronic database and assign it a control number. FOIA intake personnel also make an immediate determination on whether the request seeks a ROP, in which case it is designated as Simple (Track 2), or other agency records, in which case it is initially designated as Complex (Track 3). FOIA intake personnel then send an acknowledgment letter or a combined acknowledgement/response letter to the requester that includes the control number and other information related to fees, multi-tracking, approximate

3

time to process, and resources to assist the requester. The processing of Simple requests

remains within the FOIA Service Center for the life of the request until closed. All Complex

requests are forwarded to me as the Supervisory Attorney Advisor (FOIA) overseeing the

FOIA Program for managing, processing, and/or delegating, and such Complex requests

remain within OGC for the life of the request until closed.

      9.     For Simple requests, or first or third party requests for ROPs, the first step is to

identify the physical location of the ROP by entering a unique alien number into the agency's

CASE database.[2] Generally, a ROP is located in one of three locations: (1) within one or more

of 18 Federal Records Centers ("FRC") (long-term storage facilities) geographically located

throughout the contiguous United States; (2) within the 62 Immigration Courts and/or

Immigration Adjudication Centers geographically located throughout the United States and its

territories; or (3) within Headquarters, if the alien filed an appeal of a lower court decision. If

located, the FOIA Service Center will order or retrieve the physical file ROP, scan and process

its contents[3], and provide responsive records, if any, to the requester.  If the requester does not

provide a unique alien number or sufficient identifying information, however, the FOIA

Service Center is unable to locate the ROP by searching in CASE, will issue a "no records"

letter to the requester, and will close the request.

      10.    For Complex requests, the first step is to identify which program offices, based

on experience and knowledge of EOIR's program offices, within EOIR are reasonably likely

to possess records responsive to that request (assuming any exist) and to initiate searches

within those program offices. Once the appropriate program office(s) is/are identified for a

---

[2] CASE is EOIR's electronic case management system for the Immigration Judges, the Board of Immigration Appeals, and staff to support case management. CASE is searchable by a limited number of fields with the most commonly utilized search field being the unique alien number search field.
[3] Due to the volume of ROPs processed, scanning ROPs is contracted out to the agency contractor PAE.

4

given request, FOIA points of contact ("FOIA POCs") within each of those program offices are provided with a copy of the FOIA request and/or a detailed description of the request. The FOIA POC(s) then review(s) the FOIA request along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward(s) the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

11.     EOIR's organizational chart illustrates that the agency is organized as follows: the Office of the Director ("OOD") and seven components thereunder, specifically, the Board of Immigration Appeals ("BIA" or "Board"), the Office of the Chief Administrative Hearing Officer ("OCAHO"), the Office of the Chief Immigration Judge ("OCIJ"), the Office of the General Counsel ("OGC"), the Office of Administration ("OA"), the Office of Information Technology ("OIT"), and the Office of Policy ("OP"). *See* https://www.justice.gov/eoir/eoir-organization-chart/chart. Several minor components fall under OOD, including, the Planning, Analysis, and Statistics Division ("PASD"), the Office of Legal Access Programs ("OLAP"), and the Office of Equal Employment Opportunity ("EEO"). *See* https://www.justice.gov/eoir/office-of-the-director. Additionally, several minor components fall under OP, including, the Communications and Legislative Affairs Division ("CLAD"), the Immigration Law Division ("ILD"), and the Legal Education and Research Services Division ("LERS").

12.     For efficiency, I may group various Complex (Track 3) requests into groups based on related issues, or "Topics." For any given Topic, I may manage the processing of one general Topic that relates to a group of FOIA requests filed by different requesters while I may delegate another, different general Topic that relates to another group of FOIA requests filed

by different requesters to the other Attorney Advisor (FOIA), whom I supervise, for processing.  One common "Topic" for Complex (Track 3) requests EOIR receives is a request for "Statistics. These requests generally seek information from CASE, the agency's electronic case manager for the Immigration Judges, the Board of Immigration Appeals, and staff to support case management, described more fully in the Declaration of Brett Endres. Generally, FOIA requests for "Statistics" are tasked to PASD as they implicate data, assuming it is tracked, available through CASE.

13.     In accordance with the EOIR FOIA Unit's instructions, the individuals and component offices are directed to conduct searches of their file systems, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the file systems likely to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to one of two FOIA Unit Attorney Advisors (including me) who manage, process, and/or delegate tasking of Complex (Track 3) requests. The Attorney Advisor may then take one of two approaches based on the types of records requested to process the request.

14.     In the first approach, the Attorney Advisor reviews each record for applicable exemptions under the FOIA, 5 U.S.C. § 552(b), and properly redacts the records if exempt information is within the records. This often entails a line-by-line review of all records. This approach is generally used when the nature of the records and type of information within the records is sensitive and/or varies greatly from record to record (e.g., electronic mail records or records having privileged material).

15.     In the second approach, the Attorney Advisor may delegate a voluminous records project ("FOIA Project") to a government information professional, specialized

6

contractor, or, infrequently, to an attorney within OGC who is not part of the FOIA Unit assuming that resource is available. This approach is generally used when the Attorney Advisor determines that responsive records are similar in nature, that one or two exemptions (but not more than two) under the FOIA, 5 U.S.C. § 552(b), may be globally applied to certain exempt information within the records, and responsive records are voluminous.

16.     As of July 16, 2019, the EOIR FOIA Unit is staffed with nineteen (19) personnel. The FOIA Service Center, dedicated to FOIA intake and processing Simple requests, comprises sixteen (16) of the nineteen (19) personnel and is managed by one (1) Supervisory Government Information Specialist who oversees three (3) Government Information Specialists ("Specialists") and twelve (12) contractors (Production Control or General Clerk). The twelve (12) contractors exclusively perform administrative tasks related to the FOIA Program, such as FOIA intake and mailing responses to requesters.  The three (3) Specialists are primarily responsible for processing all Simple requests. When required, a Specialist may be assigned a particularly voluminous FOIA Project as an additional duty in accordance with the second approach described in paragraph 15. Specialists assigned a FOIA Project as an additional duty and the part-time Legal Assistant II (collectively, "FOIA Processors") are expected to process approximately 1,000 to 1,250 pages during a full-time forty (40) hour work week. The three (3) remaining FOIA Unit personnel are comprised of two full-time Attorney Advisors (FOIA), including me, and one (1) part-time specialized contractor (Legal Assistant II). The specialized contractor is the only contractor within the FOIA Program other than Specialists authorized to work on FOIA Projects on an as-needed part-time basis.

17.     EOIR's FOIA Program policy for voluminous FOIA Projects with sensitive information are subject to a three-step process. First, a FOIA Processor conducts a line-by-line

review and applies appropriate redactions pursuant to general instructions provided by an attorney. Next, the attorney conducts a second review to verify all proper FOIA redactions were utilized and globally applied. Finally, if required, the FOIA Processor conducts a third review and applies additional redactions as directed by the reviewing attorney.

### III.   PROCESSING OF PLAINTIFFS' FIRST REQUEST – FOIA 2018-40697 – ADEQUACY OF THE SEARCH

18.    I have reviewed Plaintiffs' FOIA request filed July 17, 2018 in its entirety ("First Request"), a true and correct copy of which is attached as Exhibit A to this Declaration, which generally seeks documents, data, and calculations related to "emergency" and "non-emergency" Motion to Stays filed in conjunction with either a (i) Motion to Reconsider or (ii) Motion to Reopen adjudicated by the Board of Immigration Appeals of the Executive Office for Immigration Review for Fiscal Years 2015 through 2018. The First Request comprises paragraphs one (1) through five (5) with paragraph one (1) including seven (7) sub-paragraphs. Paragraph one (1) including seven (7) sub-paragraphs is directed to information pertaining to both "emergency" and "non-emergency" Motion to Stay data. Paragraph two (2) is directed to so-called "emergency" Motion to Stay data only. Paragraphs three (3) through five (5) are directed to so-called "non-emergency" Motion to Stay data only.

19.    On July 18, 2018, an acknowledgement letter was sent to Plaintiff by the FOIA Service Center advising that Plaintiffs' request was assigned Control No. FOIA 2018-40697. The July 18, 2018 acknowledgment letter, a true and correct copy of which is attached as Exhibit B to this Declaration, notified Plaintiff that the request involved "unusual circumstances" (30 business days to process) resulting in increased processing time and offered the agency's FOIA Public Liaison and the mediation services of the Office of Government Information Services ("OGIS") to assist the requester.

20.     On July 27, 2018, the FOIA Service Center forwarded the First Request to me as it was designated as Complex (Track 3). Upon brief review, the request appeared to seek records and/or data from CASE and was therefore designated as a "Statistics" Topic to be tasked to PASD. On July 27, 2018, I delegated Plaintiffs' First Request to Shelley M. O'Hara, the Attorney Advisor (FOIA) who has processed numerous FOIA requests designated as "Statistics" Topic Complex (Track 3) requests.

21.     On August 1, 2018, Ms. O'Hara, tasked one Program Office to conduct a search for responsive records to Plaintiff First Request. A true and correct copy of the August 1, 2018 e-mail is attached as Exhibit C to this Declaration. Specifically, Ms. O'Hara tasked PASD to conduct a search as the request potentially implicated data available through CASE. On August 14, 2018, the PASD FOIA Point-of-Contact, Supervisory Program Analyst Brett Endres, responded by stating that PASD could not provide the information that Plaintiffs sought. Mr. Endres' response was supported by a forwarded e-mail from BIA Chief Clerk Donna Carr dated August 8, 2018 in which Ms. Carr explained that BIA does not generally track receipts of Motions to Stay in CASE.

22.     On August 15, 2018, Ms. O'Hara engaged BIA in an attempt to determine if BIA was in custody or control of any records or information that would be responsive to Plaintiffs' request.  On August 20, 2018, BIA FOIA Point-of-Contact Senior Legal Advisor Veronica Rubi explained in an e-mail that BIA does not track so-called "non-emergency" Motions for Stay in CASE other than an infrequent, free form comment in the Comments Tab of CASE, but that BIA does track certain information related to so-called "emergency" Motions for Stay in MS Excel Workbooks. Ms. Rubi further explained that so-called "emergency" Motions for Stay are managed by the Emergency Stay Unit ("ESU") within BIA. Ms. Rubi provided PDF copies, and eventually MS Excel Workbooks, of the ESU Stay Logs to the FOIA Office for FY2015-

9

FY2018.

23.    On August 30, 2018, Ms. O'Hara sent an e-mail to Plaintiffs requesting that they contact her to discuss their request. In the e-mail and according to her understanding at that time, Ms. O'Hara explained that BIA does not track so-called "non-emergency" Motion to Stay data, but that BIA does track limited information related to so-called "emergency" Motion to Stays. Ms. O'Hara specifically advised Plaintiffs that the only date that is tracked by the ESU is the date the Motion to Stay was received.  Ms. O'Hara asked Plaintiffs if providing the ESU Stay Logs for FY2015-FY2018 would satisfy their request and, if not, that we intended to issue a "no documents" response. A true and correct copy of the August 30, 2018 e-mail is attached as Exhibit D to this Declaration.

24.    On September 4, 2018, Ms. O'Hara held a telephone conference with the Plaintiffs regarding the First Request. During the telephone conference and according to her understanding at that time, Ms. O'Hara again explained that BIA does not track so-called "non-emergency" Motion to Stay data, but that BIA does track limited information related to so-called "emergency" Motion to Stays.  In a follow-up e-mail dated September 5, 2018, Ms. O'Hara provided to Plaintiffs the fields tracked within the ESU Stay Logs and advised Plaintiffs that the agency intended to respond to Plaintiffs' request by providing the ESU Stay Logs for FY2015-FY2018. *See* Exhibit D.

25.    On September 7, 2018, EOIR issued a Partial Grant/Partial Denial to Plaintiffs' First Request providing responsive records to paragraph two (2) ("emergency") ESU Stay Logs for FY2015-FY2018 with information related to individual alien's personally identifiable information (PII) and DHS officers e-mail addresses (per DHS) redacted under 5 U.S.C. § 552(b)(6), FOIA Exemption 6, and closed the request. A true and correct copy of the September 7, 2018 Partial Grant/Partial Denial is attached as Exhibit E to this Declaration.

26.     On September 10, 2018, Ms. O'Hara notified Plaintiffs that the agency's response was en route (via First Class Mail) and pro-actively provided a comprehensive list of meanings for acronyms within the ESU Stay Logs as a courtesy to Plaintiff and to the FOIA requester community in general. *See* Exhibit D.

27.     Following the closure of Plaintiffs' First Request on September 7, 2018, Plaintiffs contacted Ms. O'Hara stating they had questions regarding the agency's response. On October 3, 2018, Ms. O'Hara held a telephone conference with Plaintiffs to discuss the agency's response to the First Request. During the telephone conference and in accordance with the FOIA, Ms. O'Hara advised Plaintiffs that the FOIA does not require an agency to answer questions or create records in response to FOIA requests, but nonetheless agreed to try to answer Plaintiffs' questions in consultation with the BIA as a courtesy to Plaintiffs and to the FOIA requester community in general. Ms. O'Hara advised Plaintiffs to submit their inquiries in writing. On October 4, 2018, Plaintiffs submitted its first set of questions regarding the agency's response to Plaintiffs' First Request. On October 5, 2018, Ms. O'Hara substantively responded to a portion of Plaintiffs' first set of questions. On October 10, 2018, Ms. O'Hara reminded Plaintiffs again that the FOIA does not require an agency to answer questions or create records in response to FOIA requests and substantively responded to the remainder of Plaintiffs first set of questions.  A true and correct copy of the October 3-5 and 10, 2018 e-mail correspondence is attached as Exhibit F to this Declaration.

28.     Subsequently, from October 12, 2108 through December 20, 2018, Plaintiffs continued to ask numerous questions and submit inquiries to the agency about the ESU Stay Logs for FY2015-FY2018 (October 12, 2018 – Plaintiffs second set of questions; December 7, 2018 – Plaintiffs third set of questions), effectively enlarging the scope of its First Request. Although not required under the FOIA, as a courtesy to the Plaintiffs and to the FOIA requester

community in general, Ms. O'Hara, in consultation with BIA, answered all of Plaintiffs'
questions and supplied supplemental information to the ESU Stay Logs for FY2015-FY2018.
True and correct copies of the October 12, 2018 through December 20, 2019 e-mail
correspondence is attached as Exhibit G to this Declaration.

29.     During the pendency of Plaintiffs' inquiries with the agency, on November 15,
2018, Plaintiffs nonetheless submitted an administrative appeal of EOIR's September 7, 2018
Partial Grant/Partial Denial of its FOIA request to the Department of Justice, Office of
Information Policy (OIP).[4] A true and correct copy of this correspondence is attached as
Exhibit H to this Declaration.

30.     On February 14, 2019, OIP affirmed EOIR's September 7, 2018 Partial
Grant/Partial Denial to Plaintiffs on modified grounds. OIP explained that Plaintiffs' request
was not reasonably described because it would require EOIR to conduct an unreasonably
burdensome search. A true and correct copy of this correspondence is attached as Exhibit I to
this Declaration.

31.     On June 6, 2019, EOIR issued a Supplemental Response-Partial Grant/Partial
Denial to Plaintiffs providing responsive documents to Paragraph 1a "emergency", Paragraph
b, a portion of Paragraph c, Paragraph d, Paragraph f, Paragraph g, and information sufficient
for Plaintiffs to derive the information requested in Paragraph 2 for FY2014-FY2018 of the
First Request with information related to individual alien's personally identifiable information
(PII) redacted under 5 U.S.C. § 552(b)(6), FOIA Exemption 6.  A true and correct copy of the
June 6, 2019 Supplemental Response-Partial Grant/Partial Denial is attached as Exhibit J to this
Declaration.

---

[4] OIP is the DOJ component that has responsibility for adjudicating administrative appeals under the FOIA.
See https://www.justice.gov/oip/oip-foia.

## IV.     PROCESSING OF PLAINTIFFS' SECOND REQUEST – FOIA 2019-07902 – ADEQUACY OF THE SEARCH

32.     I have reviewed Plaintiffs' FOIA request filed November 19, 2018 in its entirety ("Second Request"), a true and correct copy of which is attached as Exhibit K to this Declaration, which generally seeks:

- Records reflecting policies, procedures, and training generally related to BIA stay adjudications (8 paragraphs, "Category A");

- Documents, data, and calculations related to "emergency" and "non-emergency" Motion to Stays filed in conjunction with either a (i) Motion to Reconsider or (ii) Motion to Reopen adjudicated by BIA for FY2008-FY2014 (5 paragraphs, one paragraph with 7 sub-paragraphs, "Category B"). Category B includes paragraphs one (1) through five (5) with paragraph one (1) including seven (7) sub-paragraphs. Paragraph one (1) including seven (7) sub-paragraphs is directed to information pertaining to both "emergency" and "non-emergency" Motion to Stay data. Paragraph two (2) is directed to so-called "emergency" Motion to Stay data only. Paragraphs three (3) through five (5) are directed to so-called "non-emergency" Motion to Stay data only;

- A random sampling of 20 Motion to Stay adjudications for each of FY2008 through FY2018, specifically15 Deny/5 Grant adjudications per year, or 220 Motion to Stay adjudications total ("Category C").

33.     On November 21, 2018, an acknowledgement letter was sent to Plaintiff by the FOIA Service Center advising that Plaintiffs request was assigned Control No. FOIA 2019-07902. The November 21, 2018 acknowledgment letter, a true and correct copy of which is attached as Exhibit L to this Declaration, notified Plaintiffs that the request involved "unusual circumstances" (30 business day response) resulting in increased processing time and offered the agency's FOIA Public Liaison and the mediation services of the OGIS to assist the requester.

34.     On November 21, 2018, the FOIA Service Center forwarded the First Request to me as it was designated as Complex (Track 3). On November 23, 2018, I delegated Plaintiffs Second Request to Attorney Advisor (FOIA) Shelley M. O'Hara since Ms. O'Hara processed, and continued to provide support to, Plaintiffs' First Request.

35.     On December 17, 2018, Ms. O'Hara, tasked one Program Office to conduct a search for responsive records to Plaintiffs' Second Request. A true and correct copy of the December 17, 2018 search task e-mail is attached as Exhibit M to this Declaration. Specifically, Ms. O'Hara tasked BIA to conduct a search since, as she learned during the processing of the First Request and in accordance with her understanding at that time, tracking data related to so-called "non-emergency" Motions to Stay is not tracked within CASE. In that regard and according to her understanding at that time, Ms. O'Hara was aware that, at least with respect to Category B of the Second Request, the agency could only provide so-called "emergency" ESU Stay Logs for FY2008-FY2014 assuming the BIA had custody and control of such routine use business records.[5]

36.     On December 21, 2018, twenty-three (23) business days following the filing of Plaintiffs Second Request, non-essential federal employees of EOIR, including Ms. O'Hara and I, were furloughed and did not return to work until January 28, 2019, or for a five-week period. During this same twenty-three (23) business day time period and notwithstanding Plaintiffs' November 15, 2018 appeal filed with OIP, Ms. O'Hara continued to answer all of Plaintiffs' questions, including supplying supplemental information to the ESU Stay Logs for FY2015-FY2018, with respect to Plaintiffs' First Request.

37.     During the five-week furlough, the EOIR FOIA Service Center received approximately 2,323 new FOIA requests, but was unable to input, assign new control numbers, or track any of these new requests. The furlough increased the FOIA Unit's backlog significantly and, as to be expected, affected EOIR FOIA Unit's ability to respond to any FOIA request that was pending when the furlough went into effect on December 21, 2018.  A true and

---

[5] These records are similar to those ESU Stay Logs provided to Plaintiffs in response to the First Request but for the time period FY2015-FY2018.

correct copy of a report reflecting FOIA receipts (new requests) is attached as Exhibit N to this

Declaration. On February 27, 2019, twenty-two (22) business days following the end of the

furlough, Plaintiffs filed the above-captioned lawsuit. Before filing the lawsuit, Plaintiffs did

not contact EOIR to inquire about the status of the Second Request, did not utilize the agency's

FOIA Public Liaison, did not file an appeal with OIP, or, on information and belief, did not

utilize the mediation services of the OGIS to assist the Plaintiffs with any concerns regarding

the Second Request.

38.     On March 7, 2019, EOIR issued its First Response-Full Grant to Plaintiffs

providing responsive documents to paragraphs 1-5 of Category A of the Second Request. A true

and correct copy of the March 7, 2019 First Response-Full Grant is attached as Exhibit O to this

Declaration.

39.     On March 19, 2019, EOIR issued its Second Response-Full Grant to Plaintiffs

providing responsive documents to paragraphs 6-8 of Category A of the Second Request. A true

and correct copy of the March 19, 2019 Second Response-Full Grant is attached as Exhibit P to

this Declaration.

40.     On March 21, 2019, EOIR issued its Third Response-Partial Grant/Partial Denial

to Plaintiffs providing responsive documents to FY2015-FY2018 of Category C of the Second

Request with information related to individual alien's PII redacted under 5 U.S.C. § 552(b)(6),

FOIA Exemption 6. A true and correct copy of the March 21, 2019 Third Response-Partial

Grant/Partial Denial is attached as Exhibit Q to this Declaration.

41.     On March 22, 2019, EOIR issued its Fourth Response-Partial Grant/Partial

Denial to Plaintiffs providing additional responsive documents to paragraphs 4, 7-8 of Category

A of the Second Request  with information related to individual alien's PII redacted under 5

U.S.C. § 552(b)(6), FOIA Exemption 6 and information compiled for law enforcement

purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions redacted under 5 U.S.C. § 552(b)(7)(E), FOIA Exemption 7E. A true and correct copy of the March 22, 2019 Fourth Response-Partial Grant/Partial Denial is attached as Exhibit R to this Declaration.

42.     On March 27, 2019, EOIR issued its Fifth Response-Partial Grant/Partial Denial to Plaintiffs providing the ESU Stay Logs for FY2010, FY2011, FY2012, FY2013, and FY2014 responsive to paragraph 2 of Category B ("emergency") of the Second Request with information related to individual alien's PII redacted under 5 U.S.C. § 552(b)(6), FOIA Exemption 6. A true and correct copy of the March 27, 2019 Fifth Response-Partial Grant/Partial Denial is attached as Exhibit S to this Declaration.

43.     On April 3, 2019, EOIR issued its Sixth Response-Partial Grant/Partial Denial to Plaintiffs providing the ESU Stay Logs for FY2008[6] and FY2009 responsive to paragraph 2 of Category B of the Second Request with information related to individual alien's PII redacted under 5 U.S.C. § 552(b)(6), FOIA Exemption 6. A true and correct copy of the April 3, 2019 Fifth Response-Partial Grant/Partial Denial is attached as Exhibit T to this Declaration.

44.     On May 8, 2019, EOIR issued its Seventh/Final Response-Partial Grant/Partial Denial to Plaintiffs providing responsive documents to FY2009-FY2014 of Category C of the Second Request with information related to individual alien's personally identifiable information (PII) redacted under 5 U.S.C. § 552(b)(6), FOIA Exemption 6.  A true and correct copy of the May 8, 2019 Seventh/Final Response-Partial Grant/Partial Denial is attached as Exhibit U to this Declaration.

45.     On June 6, 2019, EOIR issued a Supplemental Response-Partial Grant/Partial

---

[6] EOIR subsequently discovered that the ESU Stay Log for FY2008 was actually a duplicate of the ESU Stay Log for FY2012. EOIR informed the Plaintiffs of this error in its May 8, 2019 Seventh/Final Response.

Denial to Plaintiffs providing responsive documents to Categories A, B (specifically, Paragraph 1a "emergency", Paragraph b, a portion of Paragraph c, Paragraph d, Paragraph f, Paragraph g, and information sufficient for Plaintiffs to derive the information requested in Paragraph 2 for FY2008-FY2014), and Category C of the Second Request with information related to individual alien's personally identifiable information (PII) redacted under 5 U.S.C. § 552(b)(6), FOIA Exemption 6.  A true and correct copy of the June 6, 2019 Supplemental Response-Partial Grant/Partial Denial is attached as Exhibit V to this Declaration.

## V.   ESTIMATED BURDEN FOR EOIR FOIA TO PROCESS PORTIONS OF PLAINTIFFS FIRST AND SECOND REQUESTS

46.   With respect to Plaintiffs' First Request and Category B of Plaintiffs' Second Request, in aggregate, Plaintiffs sought the following information related to so-called "non-emergency" and "emergency" Motions to Stay:

1. For Motions to Stay filed in conjunction with either a (i) Motion to Reopen or (ii) Motion to Reconsider to be adjudicated by the BIA for FY2008 through FY2018, provide:

   a. Whether the motion was treated as an "emergency" or "non-emergency" motion for a stay of removal (as those terms are defined in BIA Practice Manual 6.4(d));
   b. The date that the motion for a stay of removal was decided;
   c. The number of days that elapsed between the date that the motion for a stay of removal was filed and the date of decision on the motion for a stay of removal;
   d. Whether the motion for a stay of removal was granted or denied;
   e. Whether the motion to reopen associated with the motion for a stay of removal was based on changed circumstances, as described in INA § 240(c)(7)(C)(ii), 8 C.F.R. § 1003.2(c)(3)(ii);
   f. Whether the motion to reopen or motion to reconsider was granted or denied; and
   g. The date that the motion to reopen or motion to reconsider was decided.

2. The aggregate raw numbers and percentage of "emergency" motions for a stay of removal (filed in connection with a motion to reopen or Motion to Reconsider) that were granted and denied in for FY2008 through FY2018,

broken down by the year and month of the decision.

3.   The aggregate raw numbers and percentages of "non-emergency" motions for a stay of removal (filed in connection with a motion to reopen or Motion to Reconsider) that were granted and denied in FY2008 through FY2018, broken down by the year and month of the decision.

4.   The mean and average processing times (from date of filing to date of decision) for "non-emergency" motions for a stay of removal (filed in connection with a motion to reopen or Motion to Reconsider) that were decided in FY2008 through FY2018, broken down by year.

5.   The aggregate number of "non-emergency" motions for a stay of removal (filed in connection with a motion to open or Motion to Reconsider) filed in in FY2008 through FY2018 that remain pending, broken down by the year in which the motion for a non-emergency stay of removal was filed.

47.   As explained in the Declaration of Donna Carr, information related to "non-emergency" Motions to Stay is not recorded in CASE.

48.   As explained in the Declaration of Christopher J. Gearin, information related to "emergency" Motions to Stay was not recorded in in CASE from FY2008-FY2014.[7] Beginning in FY2015, the Emergency Stay Unit began recording limited information related to "emergency" Motions to Stay in CASE.

### *Recording in CASE*

49.   When a motion (other than a bond motion) is filed with the BIA – whether or not accompanied by a Motion to Stay Removal – and routed to the Motions Team, an Appeal Type code "MTR BIA" is selected from a drop-down menu and entered into CASE under the alien's electronic case file. A further Board Motion Type sub-code "REO" (Motion to Reopen) or "REC" (Motion to Reconsider) or "REI" (Motion to Reinstate) is simultaneously selected as well. Beginning in or around FY2015, additional limited information related to "emergency"

---

[7] Prior to FY2015, the ESU did not use CASE data fields to track the filing of emergency stays, with the exception of infrequently notating that a stay request had been filed in the Comments Tab of CASE, which allows the user to input free-form text. *See* Declaration of Christopher J. Gearin.

Motions to Stay only began to be recorded in CASE. The following scenarios illustrate *all*

Motions to Reopen and Motions to Reconsider adjudicated by the Board as recorded in CASE,

i.e., whether or not filed concurrently with a Motion to Stay Removal:

(1) Motion to Reopen before the Board (generally)
   o Motion to Reopen adjudicated by the Board
   o Recorded in CASE as MTR BIA / REO
      ▪ Date Motion to Reopen filed
      ▪ Date Motion to Reopen adjudicated
      ▪ Granted/Denied

(2) Motion to Reopen and Motion to Stay concurrently before the Board ("**non-emergency**")
   o Motion to Reopen adjudicated by the Board
   o Motion to Stay may/may not be adjudicated by the Board because it can be rendered moot in view of underlying substantive Motion to Reopen
   o Recorded in CASE as MTR BIA / REO
      ▪ Date Motion to Reopen filed
      ▪ Date Motion to Reopen adjudicated
      ▪ Granted/Denied
      ▪ *No information related to "non-emergency" Motion to Stay recorded*

(3) Motion to Reconsider before the Board (generally)
   o Motion to Reconsider adjudicated by the Board
   o Recorded in CASE as MTR BIA / REC
      ▪ Date Motion to Reconsider filed
      ▪ Date Motion to Reconsider adjudicated
      ▪ Granted/Denied

(4) Motion to Reconsider and Motion to Stay concurrently before the Board ("**non-emergency**")
   o Motion to Reconsider adjudicated by the Board
   o Motion to Stay may/may not be adjudicated by the Board because it can be moot in view of underlying substantive Motion to Reconsider
   o Recorded in CASE as MTR BIA / REC
      ▪ Date Motion to Reconsider filed
      ▪ Date Motion to Reconsider adjudicated
      ▪ Granted/Denied
      ▪ *No information related to "non-emergency" Motion to Stay recorded*

(5) Motion to Reopen and Motion to Stay concurrently before the Board ("**emergency**") beginning in/around FY2015

- o Motion to Reopen adjudicated by the Board
- o <u>Recorded in CASE as MTR BIA / REO</u>
  - ▪ Date Motion to Reopen filed
  - ▪ Date Motion to Reopen adjudicated
  - ▪ Granted/Denied
- o Motion to Stay adjudicated by the Board because removal "imminent"
- o <u>Recorded in CASE as Interim Board Decision</u>
  - ▪ Interim Board Decisions: Date Filed
  - ▪ Interim Board Decisions: Date Decided
  - ▪ Interim Board Decisions: Deny/Grant

(6)  Motion to Reconsider and Motion to Stay concurrently before the Board ("**emergency**") beginning in/around FY2015

- o Motion to Reconsider adjudicated by the Board
- o <u>Recorded in CASE as MTR BIA / REC</u>
  - ▪ Date Motion to Reconsider was filed
  - ▪ Date Motion to Reconsider was adjudicated
  - ▪ Granted/Denied
- o Motion to Stay adjudicated by the Board because removal "imminent"
- o <u>Recorded in CASE as Interim Board Decision</u>
  - ▪ Interim Board Decisions: Date Filed
  - ▪ Interim Board Decisions: Date Decided
  - ▪ Interim Board Decisions: Deny/Grant

## <u>*"Non-Emergency" Motions to Stay*</u>

50.     As illustrated in the above scenarios, all Motions to Reopen or Motions to Reconsider adjudicated by the Board – whether or not they are filed in connection with a Motion to Stay – are uniformly coded in CASE as MTR BIA / REC or MTR BIA / REO. As explained in paragraph 48 above, beginning in or around FY2015, limited information related to so-called "emergency" Motions to Stay Removal began to be recorded in CASE. However, at no time – including as of the date of this declaration – was/is information related to so-called "non-emergency" Motions to Stay Removal recorded in CASE. Accordingly, through CASE, there is no way to know whether a so-called "non-emergency" Motion to Stay was even filed absent reviewing each and every individual alien's hard-copy ROP that is coded MTR BIA /

REC or MTR BIA / REO.

51.     Because the agency **DOES NOT** record information related to so-called "non-emergency" Motions to Stay filed in connection with either a (i) Motion to Reopen or (ii) Motion to Reconsider in CASE, records reflecting information requested by Plaintiffs related to "non-emergency" Motions for Stays in paragraph 1 and all of paragraphs 3 through 5 of the First Request, and Category B, paragraph 1 and all of paragraphs 3 through 5 of the Second Request are not reasonably available.

52.     To the extent so-called "non-emergency" Motions to Stay filed in connection with either a (i) Motion to Reopen or (ii) Motion to Reconsider **were** filed with the Board, those hard-copy records remain in the individual alien's hard-copy ROP located in one of three locations: (1) within one or more of 18 Federal Records Centers (long-term storage facilities) geographically located throughout the contiguous United States; (2) within the 62 Immigration Courts and/or Immigration Adjudication Centers geographically located throughout the United States and its territories; or (3) within Headquarters, if the alien filed an appeal of an immigration court decision.

53.     In light of the pending litigation, the agency directed PASD to create a report from EOIR's CASE database to determine the total number of Motions to Reopen and Motions to Reconsider adjudicated by the Board from FY2008 through FY2018 ("PASD Report") to utilize as a baseline for projecting costs and time associated with processing Plaintiffs' First Request and Category B of Plaintiffs' Second Request as-filed. From FY2008 through FY2018, the PASD Report indicates that the Board adjudicated 15,005 Motions to Reconsider (coded MTR BIA / REC) and 67,984 Motions to Reopen (coded MTR BIA / REO), or 82,989 total. Subsumed within these adjudications coded as either MTR BIA / REC or MTR BIA / REO include:

- Motions to Reopen filed with the Board with/without a concurrently filed Motion to Stay (including so-called "emergency" and "non-emergency" Motions for Stay)
- Motions to Reconsider filed with the Board with/without a concurrently filed Motion to Stay (including so-called "emergency" and "non-emergency" Motions for Stay)

with no way to differentiate absent a physical hard-copy review of each and every one of the ROPs captured in the PASD Report. Thus, in order to fulfill Plaintiffs' request related to "non-emergency" Motions to Stay in paragraph 1 and all of paragraphs 3 through 5 of the First Request, and Category B, paragraph 1 and all of paragraphs 3 through 5 of the Second Request, the agency would have to do the following:

- One-by-one identify the location of each of the 82,989 individual alien ROPs identified in the PASD Report by accessing CASE or Archives and Records Centers Information System (ARCIS)[8];

- After identifying the location for each ROP, one-by-one order 82,989 individual alien ROPs by courier service from:  (1) one or more of 18 Federal Records Centers (long-term storage facilities) geographically located throughout the contiguous United States; (2) within the 62 Immigration Courts and/or Immigration Adjudication Centers geographically located throughout the United States and its territories; or (3) within Headquarters, if the alien filed an appeal of an immigration court decision;

- Once received by the agency, send each of the 82,989 individual alien ROPs to the agency contractor PAE, who is contracted to scan all ROPs[9];

- Once scanned and returned to the agency, review each scanned ROP one-by-one to

---

[8] ARCIS is the web-based IT system of the Federal Records Centers (FRCs) of the National Archives and Records Administration. The system is the online portal through which and agency does business with the FRCs. *See* https://www.archives.gov/frc/arcis/about#what.

[9] PAE is not authorized to review ROPs on a case-by-case basis and, therefore, per its contract, will scan an entire ROP regardless of content.

determine if a so-called "non-emergency" Motion to Stay was filed in connection
with a (i) Motion to Reopen, or (ii) Motion to Reconsider;

- To the extent a "non-emergency" Motion to Stay was filed in connection with a (i)
Motion to Reopen, or (ii) Motion to Reconsider within the 82,989 individual ROPs,
extract:  (1) Motion to Stay, (2) Motion to Reconsider or Reopen, and (3) Board
Order from the ROP scanned in its entirety; and

- Conduct at least one line-by-line review and apply appropriate redactions pursuant to
the FOIA as described in paragraph 17 above.

### *"Emergency" Motions to Stay*

54.     As illustrated in the above scenarios, all Motions to Reopen or Motions to
Reconsider adjudicated by the Board – whether or not they are filed in connection with a
Motion to Stay and whether or not they are *de facto* designated as "non-emergency" or
eventually designated as "emergency" – are uniformly coded in CASE as MTR BIA / REC or
MTR BIA / REO.

55.     From FY2015 through FY2018, the Board recorded limited information related to
"emergency" Motions to Stay filed in connection with a (i) Motion to Reopen, or (ii) Motion to
Reconsider in CASE.[10] As relates to Plaintiffs' First Request, this information is responsive to
"emergency"-related Motions to Stay Removal only, or, Paragraph 1a, Paragraph b, information
sufficient for Plaintiffs to derive the information in Paragraph c, Paragraph d, Paragraph f,
Paragraph g, and information sufficient for Plaintiffs to derive the information in Paragraph 2
(*see* paragraph 48 above) of Plaintiffs' First Request. The agency provided this information to
Plaintiffs in a Supplemental Response to Plaintiffs First Request (FOIA 2018-40697) dated

---

[10] *See* Declaration of Christopher J. Gearin.

June 6, 2019.

56.     From FY2008 through FY2014, information related to "emergency" Motions to Stay filed in connection with a (i) Motion to Reopen, or (ii) Motion to Reconsider was essentially not recorded in CASE.[11] To the extent such information was recorded[12] and as relates to Category B of Plaintiffs' Second Request, this information is responsive to "emergency"-related Motions to Stay Removal only, or, Paragraph 1a, Paragraph b, information sufficient for Plaintiffs to derive the information in Paragraph c, Paragraph d, Paragraph f, Paragraph g, and information sufficient for Plaintiffs to derive the information in Paragraph 2 (*see* paragraph 48 above) of Category B of Plaintiffs' Second Request was recorded. The agency provided this information to Plaintiffs in a Supplemental Response to Plaintiffs' Second Request (FOIA 2019-07902) dated June 6, 2019.

57.     However, information related to Paragraph e, i.e., "whether [a] motion to reopen associated with the motion for a stay of removal was based on changed circumstances, as described in INA § 240(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii)," would be subsumed in the alien's or his/her attorney's substantive Motion to Reopen or Reconsider and resides only in hard-copy in the individual alien's ROP. If available, that information can only be acquired by the process described in paragraph 52 above.

### *Costs*

58.     The only means of providing the remaining information described in paragraph 46 above and not already provided to Plaintiffs in the agency's multiple disclosures (*see* paragraphs

---

[11] *See* Footnote 7.
[12] Sporadic, incomplete information, i.e., approximately 59 "emergency" Motions to Stay filed in connection with a (i) Motion to Reopen, or (ii) Motion to Reconsider were recorded in CASE from FY2008 through FY2014. By comparison, the Emergency Stay Unit recorded approximately 1,908 "emergency" Motions to Stay filed in connection with a (i) Motion to Reopen, or (ii) Motion to Reconsider in the ESU Stay Log.

25, 30 and 38-45 above) because the information is not reasonably available is to effectuate the process described in paragraph 53 above – that is, to being with, the agency would have to identify, locate, order 82,989 individual ROPs from:  (1) one or more of 18 Federal Records Centers (long-term storage facilities) geographically located throughout the contiguous United States; (2) within the 62 Immigration Courts and/or Immigration Adjudication Centers geographically located throughout the United States and its territories; or (3) within Headquarters, if the alien filed an appeal of an immigration court decision. This does take into account the remaining steps as described in paragraph 53 above.

59.     As discussed in paragraph 5 above, in FY 2018, EOIR processed 44,216 Simple perfected requests and 310 Complex perfected requests, or 44,526 total perfected requests. *See* https://www.justice.gov/oip/page/file/1135751/download. Processing Simple requests[13] for FY2018, therefore, represented 99.3%[14] of the requests processed for FY2018. The total cost and personnel associated with processing all 44,516 FOIA requests over a one-year period was reported as $4,759,650.00 with 42 full-time personnel. *See id*.  Therefore, the estimated cost and personnel associated with processing Simple requests for FY2018 is $4,726,332.00[15] and almost 42 full-time personnel, or approximately $107.00[16] for each Simple request.

60.     Based on the FY2018 Simple processed request data, processing Plaintiffs' First Request and Category B of Plaintiffs' Second Request would cost approximately $8,879,823.00 with almost 42 full-time personnel working for an over two-year period.[17]

---

[13] As discussed in paragraph 11 above, Simple requests (Track 2) are the processing of requests for individual hard-copy ROPs.

[14] 44,316 divided by 44,526 equals 99.3%.

[15] 99.3% of $4,759,650.00 is $4,726,332.00.

[16] $4,726,332.00 divided by 44,316 Simple requests/ROPs is approximately $107.00 to process each Simple request/ROPs.

[17] $107.00 times 82,989 equals $8,879,823.00. Additionally, since the agency reported that it took 42 full-time personnel to process 44,516 ROPs in FY2018, the agency estimates that processing 82,989 (roughly twice the amount of ROPs in FY2018) would take over two years and likely much longer since the agency does not have 42 full-time

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated the 15th day of July 2019.

_____
JOSEPH R. SCHAAF

---

personnel at its disposal at this time to process the remaining information from Plaintiff's First Request and Category B of Plaintiff's Second Request.