## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL; KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC AT THE BENJAMIN N. CARDOZO SCHOOL OF LAW,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; U.S. DEPARTMENT OF JUSTICE,<br><br>Defendants. | Civil Action No. 1:19-cv-01835-DLC |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Lindsay Nash
Kathryn O. Greenberg Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue, 11th Floor
New York, NY 10003
(212) 790-0433

Claudia Valenzuela
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7540

Trina Realmuto
Kristin Macleod-Ball
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ............................................................................................................... 3

  A. LAW AND PRACTICE REGARDING MOTIONS TO REOPEN OR RECONSIDER
     AND ASSOCIATED REQUESTS TO STAY DEPORTATION FILED WITH THE BIA  3

  B. PROCEDURAL HISTORY OF PLAINTIFFS' FOIA REQUESTS ................................... 5

III. STANDARD OF REVIEW ................................................................................................ 9

IV.  ARGUMENT ................................................................................................................... 10

  A. DEFENDANTS MUST CONDUCT AN ADEQUATE SEARCH ................................... 10

  B. DEFENDANTS FAILED TO CONDUCT AN ADEQUATE SEARCH FOR TRAINING
     MATERIALS AIMED AT JUDGES RESPONSIVE TO PARAGRAPH 8, CATEGORY I
     IN THE SECOND REQUEST ............................................................................................ 11

  C. DEFENDANTS FAILED TO CONDUCT AN ADEQUATE SEARCH FOR RECORDS
     REGARDING NON-EMERGENCY STAY REQUESTS RESPONSIVE TO
     PARAGRAPH 1, CATEGORY II OF THE SECOND REQUEST AND PARAGRAPH 1
     OF FIRST REQUEST ........................................................................................................ 14

V.   CONCLUSION ................................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bigwood v. U.S. Dep't of Defense,* 132 F.Supp.3d 124 (D.D.C. 2015) ........................................ 16

*Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262 (S.D.N.Y. 2009)........................................................................................................................................ 10

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir.1994)................................................... 10

*Dada v. Mukasey*, 554 U.S. 1 (2008) ........................................................................................ 3

*Founding Church of Scientology v. Nat'l Security Administration*, 610 F.2d 824 (D.C. Cir. 1979).................................................................................................................................... 11

*Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) .......................... 10, 12

*Int'l Counsel Bureau v. U.S. Dep't of Defense*, 657 F. Supp. 2d 33 (D.D.C. 2009) .................... 13

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ...................................................................... 13

*Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enforcement*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) .................................................................................... 10, 13, 14

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995)............................... 15, 16

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................................... 3

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ........................................................ 9

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir.1990) ................................................... 15

*SafeCard Servs., Inc., v. Sec. and Exchange Comm'n*, 926 F.2d 1197 (2d Cir. 1991)................ 10

*Scudder v. Central Intelligence Agency*, 25 F. Supp. 3d 19 (D.D.C. 2014) ............................... 17

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) ........................................................ 9

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989).......... 9

*U.S. Dep't of Justice v. Tax Analy*sts, 492 U.S. 136 (1989) ........................................................ 9

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991)................................................................... 9, 16

*U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976)........................................................... 9

*Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344 (D.C. Cir. 1983).................................... 10, 14

**Statutes**

5 U.S.C. § 552(a)(3)(A) ............................................................................................................. 9

5 U.S.C. § 552(a)(3)(B) ......................................................................................................... 2, 17

5 U.S.C. § 552(a)(3)(C) ............................................................................................................. 2

5 U.S.C. § 552(a)(4)(B) ............................................................................................................. 9

8 U.S.C. § 1229a(c)(6) ............................................................................................................... 3

8 U.S.C. § 1229a(c)(7) ............................................................................................................... 3

8 U.S.C. § 1229a(c)(7)(C)(ii)..................................................................................................... 3

**Regulations**

8 C.F.R. § 1003.1(a)(2)(i)(B)................................................................................................... 13

8 C.F.R. § 1003.2........................................................................................................................ 3

8 C.F.R. § 1003.2(f).................................................................................................................... 3

8 C.F.R. § 1003.23...................................................................................................................... 3

28 C.F.R. § 16.5(c)................................................................................................................ 17

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................ 9, 18

**Other Authorities**

American Immigration Lawyers Association, *EOIR Releases Materials from the 2018 Legal Training Program for Immigration Judges* (Oct. 25, 2019) ...................................................... 13

Board of Immigration Appeals, *Board of Immigration Appeals Practice Manual* (Jul. 31, 2019).................................................................................................................... 4, 5, 14

Christina Goldbaum, *'I Don't Want to Die': Asylum Seekers, Once in Limbo, Face Deportation Under Trump*, N.Y. Times (April 21, 2019) ............................................................... 3

## I.      INTRODUCTION

In this Freedom of Information Act (FOIA) action, Plaintiffs seek data and policies about the largely opaque process used by the Board of Immigration Appeals (Board or BIA) to adjudicate requests for stays of deportation filed in conjunction with motions to reopen or reconsider. These requests provide a critical procedural protection for individuals with final removal orders—the chance to remain in the United States while they challenge the unlawfulness of their prior orders. This protection is especially vital given the current level and pace of immigration enforcement that renders individuals in this procedural posture particularly vulnerable. Notably, Defendants do not publish any information about the rates at which stay requests are filed or adjudicated; they have never even provided the public with the legal standard that BIA members use to adjudicate the requests.

Plaintiffs filed two FOIA requests seeking this information, in July and in November of 2018, with the Executive Office for Immigration Review (EOIR), which includes the BIA. Plaintiffs have pursued the release of the information in order to make public crucial information about how the BIA trains staff at all levels to track and decide these motions, as well as to assess trends in how this key procedural safeguard is administered.

After consultation with Plaintiffs (and largely after this litigation was filed), Defendants have produced records in response to many elements of Plaintiffs' FOIA requests. However, Defendants have failed to conduct a reasonable search for records in two key categories: 1) training resources, materials, or modules directed at immigration judges and BIA members, related to the legal standards for adjudicating motions to stay removal and 2) data relating to non-emergency stay motions (a category for which Defendants failed to produce *any* records). Plaintiffs challenge the adequacy of Defendants' search with respect to these two categories.

1

As to the first category, Defendants are silent as to the process they used to search for responsive records, even though documents they have previously produced suggest that additional records exist. As to the second category, Defendants acknowledge that they possess responsive records but will not produce them because they allege that production would be overly burdensome and/or require the agency to create new records. But Defendants are wrong on both counts: their own filings acknowledge that at least some responsive material exists in EOIR's case management software; producing this information would not require the production of new records. Defendants' refusal to produce documents relating to non-emergency stay motions ignores statutory language that mandates agencies make available information that is "readily reproducible" and "make reasonable efforts to maintain its records" for production. 5 U.S.C. § 552(a)(3)(B). Further, despite Defendants' protestations to the contrary, Plaintiffs have made various attempts to work with the agency prior to undertaking the present action and were never afforded the option of narrowing their request, a well-established practice to effectuate the FOIA.

Defendants' failure to adequately search for records responsive to the relevant requests contravenes FOIA's clear statutory mandate. *See* 5 U.S.C. § 552(a)(3)(C). For these reasons, Plaintiffs are entitled to relief as a matter of law and ask the Court to deny Defendants' motion for summary judgement and to grant summary judgment in Plaintiffs' favor.

## II.      BACKGROUND

**A.      LAW AND PRACTICE REGARDING MOTIONS TO REOPEN OR RECONSIDER AND ASSOCIATED REQUESTS TO STAY DEPORTATION FILED WITH THE BIA**

The Immigration and Nationality Act (INA) and its accompanying regulations provide mechanisms to permit individuals to move to reopen or reconsider prior removal orders. *See* 8 U.S.C. § 1229a(c)(6), (7), 8 C.F.R. §§ 1003.2, 1003.23. These motions serve as an "important safeguard" to "ensure a proper and lawful disposition" of immigration proceedings. *Dada v. Mukasey*, 554 U.S. 1, 18 (2008). By regulation, individuals who file such motions can also seek to prevent their deportation, and resulting irreparable harm,[1] by filing a request to stay deportation while their motions are pending. *See*, *e.g.*, 8 C.F.R. § 1003.2(f). If the BIA grants a stay request, the Department of Homeland Security (DHS) cannot deport the person who filed it while their motion to reopen or reconsider is pending. The motion to reopen and stay mechanisms play an important role, especially for noncitizens with fear-based claims: providing an opportunity to present new grounds for protection and preventing deportation to countries where an individual may face injury or even death while those claims are adjudicated for the first time. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* Christina Goldbaum, *'I Don't Want to Die': Asylum Seekers, Once in Limbo, Face Deportation Under Trump*, N.Y. Times (April 21, 2019), https://www.nytimes.com/2019/04/21/nyregion/asylum-seekers-deportation.html.

Despite the importance of stays, the BIA's practices frequently render this mechanism faulty at best, and sometimes non-functional. Notably, the BIA has not made public the legal

---

[1]      Federal courts apply the standard set forth in *Nken v. Holder*, 556 U.S. 418 (2009) in adjudicating requests to stay deportation pending judicial review, which requires consideration of irreparable harm. The BIA has not publicly adopted *Nken*, or any other legal standard, for motions to stay removal filed with the administrative agency.

standard that it applies when adjudicating stay requests, which inhibits *pro se* litigants and attorneys from filing effective requests. Putting aside situations in which the BIA must automatically grant a stay, there are no regulations, guidance, or published decisions providing a governing legal standard. *See, e.g.*, BIA Practice Manual, Ch. 6.3 (Jul. 31, 2019), https://www.justice.gov/eoir/page/file/1189771/download (providing guidance regarding filing stay requests, but no standard); Dkt. 33-1 (standard operating procedure produced in response to this litigation, providing internal guidance to BIA staff regarding processing stay requests, but no standard).

Furthermore, the BIA has a practice of differentiating between "emergency" and "non-emergency" stay requests and refusing to adjudicate time-sensitive motions for stays of removal until shortly before the moment of deportation. Although noncitizens may seek a stay in conjunction with the filing of a motion at any time after their final removal order issues, the BIA only adjudicates stay motions in a time-sensitive manner when the request is considered an "emergency" motion. *See* BIA Practice Manual, Ch. 6.3(c)(ii)(A)-(B); Dkt. 31 at 4-6. Stay requests are only considered "emergency" motions if the noncitizen: (1) is in DHS's physical custody and deportation is imminent; (2) turns himself or herself in to DHS custody in order to be removed and removal is expected to occur within the next three business days; or (3) is scheduled to self-execute an order of removal within the next three business days. *See* BIA Practice Manual, Ch. 6.3(c)(ii)(A)(1)-(3). As a matter of practice, the BIA generally considers deportation to be sufficiently "imminent" to qualify only when a noncitizen is in custody and forty-eight hours or less away from being physically removed. Dkt. 33-1 at 5, 19. Moreover, according to the BIA Practice Manual—the BIA's only published guidance to noncitizens and attorneys about these procedures—even though DHS is the only entity with knowledge of the

date and time of deportation and may elect not to share that information due to security reasons, the BIA affirmatively places the onus on noncitizens to inform it of relevant time exigencies, imminent deportation, and the need to treat a stay request as an emergency motion. *See* BIA Practice Manual, Ch. 6.3(c)(i)(D), (ii)(A).[2] Furthermore, the BIA does not operate during certain hours when DHS executes removal orders.[3] As a result, individuals with pending requests to stay removal can be deported while those requests remain unadjudicated, including non-emergency motions to reopen.

## B.   PROCEDURAL HISTORY OF PLAINTIFFS' FOIA REQUESTS

In order to obtain information about the flawed process through which the BIA adjudicates these important requests, on July 17, 2018, Plaintiffs submitted their first FOIA request to EOIR (First Request) for records related to motions for a stay of removal filed with the BIA in conjunction with a motion to reopen or motion to reconsider. *See* Dkt. 4-1. This request sought a narrow set of records regarding motions for a stay of removal filed in conjunction with motions to reopen or reconsider in the fiscal years (FY) 2015 through 2018. *Id.* at 1-2. The First Request sought disclosure of records that, inter alia, would show whether the motion was treated as "emergency" or "non-emergency," the frequency with which the BIA grants each type of motion, the timeline for adjudicating such motions, and certain information pertaining to "each motion for a stay of removal" filed within the relevant period and within the scope of the request. *Id.* at 2. Furthermore, it requested raw data and percentages for grant and denial rates for both

---

[2]    Although Defendants indicate that certain cases with non-emergency stay requests are transferred to a pending list of potential emergency stays after inquiries by DHS officers, *see* Dkt. 33 ¶12, DHS is not obligated to make such inquiries prior to deporting someone.

[3]    The department within the BIA that processes emergency stay motions is closed after 5:30 PM and on all weekends and federal holidays. *See* BIA Practice Manual, Ch. 6.3(c)(ii)(A). However, DHS can deport an individual at any time.

emergency and non-emergency stay requests broken down by year and month. *Id.*

On July 18, 2018, Plaintiffs received a letter acknowledging receipt of Plaintiffs' FOIA request and stating that "unusual circumstances" required a delay in responding to the request. *See* Dkt. 4-2. Nearly two months later, on September 7, 2018, Plaintiffs received Defendants' response, an Excel spreadsheet containing certain "stay of removal data" related to emergency stay requests that is tracked by the BIA's Emergency Stay Unit. *See* Dkt. 4-3. The data that was provided contained errors, including missing and duplicate information. Declaration of Lindsay Nash ¶10.

Between August and December 2018, Plaintiffs made diligent efforts to resolve the First Request without resorting to litigation, including emails and phone conversations with an assigned FOIA officer. *Id.* ¶6. These communications included an effort to ascertain (1) the availability of other responsive records or information that could clarify the missing and incorrect data in the one record Defendants did produce, and (2) what responsive information about stay requests was included in Case Access System for EOIR (CASE), EOIR's case management software, and other databases in Defendants' control. *Id.* ¶¶3-12. The officer assigned to the case informed Plaintiffs that she was new to her position at EOIR; because of this lack of experience, the officer largely was unable to engage in discussion regarding EOIR's record systems that might have permitted Plaintiffs to effectively resolve the request absent litigation. *Id.* ¶¶7-8. The officer declined Plaintiffs' request to speak to another officer who was more versed in the CASE database and who might have been able to assist the parties in narrowing the request in light of the information available in that database. *Id.* ¶8.

During these communications, the FOIA officer stated (incorrectly) that information related to stay requests is not tracked in CASE. *Id.* ¶9; *but see* Dkt. 33 ¶¶21-22. She also stated

(correctly) that CASE *does* contain some information about some stay requests in its Comments field. Nash Decl. ¶9; *see also, e.g.*, Dkt. 33 ¶17.

On November 15, 2018, Plaintiffs submitted an administrative appeal of Defendants' inadequate response to the First Request. Dkt. 4-4. Plaintiffs received no response to or acknowledgement of the appeal for three months. On February 14, 2019, Plaintiffs received a determination on the appeal. Dkt. 4-5. The decision affirmed EOIR's response, but on partly modified grounds: asserting that Plaintiffs' request did not reasonably describe the records sought and that a search for responsive records would be unduly burdensome. *Id*. at 1.

On November 19, 2018, Plaintiffs submitted a second FOIA request to EOIR (Second Request). Dkt. 4-6. The Second Request, like the First Request, involved records related to motions for a stay of removal filed with the BIA in conjunction with a motion to reopen or motion to reconsider. *Id*. at 1. The Second FOIA Request sought three categories of records: (1) records reflecting EOIR's policies and procedures for processing, recording, and tracking motions for stays of removal filed in connection with a motion to reopen or motion for reconsideration filed with the BIA; (2) records similar to those requested in the First Request, but for FY 2008 through FY 2014; and (3) a random sample of written decisions denying motions for a stay of removal. *Id.* at 2-4. One portion of the request for policies and procedures sought "[t]raining resources, materials, and modules for EOIR staff members and judges in Immigration Courts and the BIA relating to the processing, screening, and adjudication of motions for a stay of removal, motions to reopen, and motions to reconsider." *Id* at 2. The request specifically noted that Plaintiffs "may be willing to discuss ways to narrow portions of the request to the extent that a mutually agreeable resolution can be negotiated," upon Defendants' request. *Id*. at 2 n.5. Plaintiffs received a letter dated November 21, 2018 acknowledging EOIR's receipt of Plaintiffs'

Second Request and stating that "unusual circumstances" required a delay in responding to the request. *See* Dkt. 4-7.

Not having received any substantive response to the Second Request, Plaintiffs filed this lawsuit on February 27, 2019, challenging Defendants' failure to conduct an adequate search, failure to produce responsive records, and failure to timely respond to the FOIA request. Dkt. 1. Following the initiation of this case, Defendants provided Plaintiffs with eight productions of records responsive to various parts of the two FOIA requests. *See* Dkts. 35-15-35-22. Subsequently, the parties resolved the majority of their disputes, including those regarding requests for (1) a random sample of stay denial decisions, (2) 7 out of 8 categories of policy related documents, and (3) the data categories that relate to emergency stay requests. The parties remained in dispute regarding the adequacy of Defendants' search for documents responsive to Paragraphs 1 and 3-5 of the First Request (relating to non-emergency stay requests); Paragraphs 1 and 3-5 of Category II of the Second Request (relating to non-emergency stay requests); and Paragraph 8 of Category I of the Second Request (relating to certain training materials for judges and court staff). *See* Dkt. 31 at 19. Now, Plaintiffs further limit their challenge to the adequacy of Defendants' search and failure to produce responsive records under:

- Paragraph 1 of the First Request;

- Paragraph 1 of Category II of the Second Request; and

- Paragraph 8 of Category I of the Second Request, *only* as to "[t]raining resources, materials, and modules for . . . judges in Immigration Courts and the BIA relating to the processing, screening, and adjudication of motions for a stay of removal" (not materials for court staff or relating to motions to reopen or reconsider).

### III.   STANDARD OF REVIEW

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (noting that FOIA is intended "to ensure public access to information created by the government"). Toward that end, FOIA provides that agencies "shall make . . . records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules . . . ." 5 U.S.C. § 552(a)(3)(A). FOIA is "broadly conceived," and its "basic policy" is in favor of disclosure. *Robbins Tire*, 437 U.S. at 220 (quotations omitted); *see also U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (noting that FOIA prioritizes "disclosure, not secrecy").

Against this backdrop, the FOIA statute is unique in administrative law in that it places the burden of justifying failure to produce responsive records on the defendant agency and mandates *de novo* judicial review. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought . . . have not been improperly withheld." *U.S. Dep't of Justice v. Tax Analy*sts, 492 U.S. 136, 142 n.3 (1989) (internal quotation marks omitted).

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the agency seeks summary judgment in an action invoking FOIA, its burden entails justifying nondisclosure. *See* 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)

(noting that FOIA's "strong presumption in favor of disclosure places the burden on the agency

to justify the withholding of any requested documents"); *Carney v. U.S. Dep't of Justice*, 19 F.3d

807, 812 (2d Cir.1994) ("[T]o prevail on a motion for summary judgment in a FOIA case, the

defending agency has the burden of showing that its search was adequate and that any withheld

documents fall within an exemption to FOIA.").

## IV.    ARGUMENT

## A.    DEFENDANTS MUST CONDUCT AN ADEQUATE SEARCH

In keeping with the general dictates of FOIA, the burden is on the agency to first and

foremost "conduct an adequate search using reasonable efforts . . . ." *Bloomberg L.P. v. Bd. of

Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 270 (S.D.N.Y. 2009), *aff'd*, 601 F.3d 143

(2d Cir. 2010). An agency search is adequate where it is "reasonably calculated to uncover all

relevant documents." *Id.* at 271; *see also Nat'l Day Laborer Org. Network v. U.S. Immigration &

Customs Enforcement*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012). An agency need not uncover all

possible responsive documents for its search to be adequate; nonetheless, the agency does need

to affirmatively ensure that a reasonable search was conducted. The agency may support the

adequacy of its search with declarations, but those "affidavits must be . . . relatively detailed and

nonconclusory, and . . . submitted in good faith." *Grand Central Partnership, Inc. v. Cuomo*, 166

F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc., v. Sec. and Exchange Comm'n*, 926

F.2d 1197, 1200 (2d Cir. 1991)). Further, "[e]vidence that relevant records have not been

released may shed light on whether the agency's search was indeed adequate." *Weisberg v. U.S.

Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Nat'l Day Laborer Org.

Network*, 877 F. Supp. 2d at 95 (same); *Founding Church of Scientology v. Nat'l Security

*Administration*, 610 F.2d 824, 837 (D.C. Cir. 1979) (finding a search inadequate where there

were "well-defined requests and positive indications of overlooked materials").

**B.      DEFENDANTS FAILED TO CONDUCT AN ADEQUATE SEARCH FOR
         TRAINING MATERIALS AIMED AT JUDGES RESPONSIVE TO PARAGRAPH
         8, CATEGORY I IN THE SECOND REQUEST**

        As noted previously, *supra at* Section II.B, Plaintiffs challenge the adequacy of

Defendants' search with regard to only one sub-category of Category I of the Second Request:

Paragraph 8, which requested the following documents:

>        8.      Training resources, materials, and modules for EOIR staff members and judges in
>                Immigration Courts and the BIA relating to the processing, screening, and
>                adjudication of motions for a stay of removal, motions to reopen, and motions to
>                reconsider.

Dkt. 4-6 at 2. More specifically, Plaintiffs challenge the adequacy of Defendants' search for

resources, materials, and modules for immigration judges and BIA members (not EOIR staff)

relating to the legal standards applied in the adjudication of motions for a stay of removal (not

motions to reopen or reconsider).

        Plaintiffs sought this information to glean more insight as to how immigration court and

BIA judges—dispositive adjudicators of motions to stay removal—are trained and/or instructed

in this area of law, specifically with regard to legal standards they are trained to apply to stay

requests. At present, the agency has no published precedent stating the legal standard applied to

stay requests. *See supra* at Section II.A This leaves advocates and noncitizens with little

guidance as to how to substantively prepare requests for stays of deportation. The lack of clear

guidance can result in arbitrary or erroneous decision-making and, subsequently, improper

deportations. For these reasons, access to substantive training resources aimed at the adjudicators

of these motions is essential for attorneys, noncitizens and the general public.

11

The record does not indicate that Defendants conducted an adequate search for training materials for judges and BIA members specific to adjudicating stay motions. While Defendants have produced records responsive to Paragraph 8, *see* Dkt. 35-16, 35-18, these records largely relate to training on the adjudication of other types of motions and/or are targeted to EOIR staff other than immigration judges and BIA members and/or provide training and support in the adjudication of other types of motions (rather than motions to stay deportation). *See, e.g.*, Declaration of Kristin Macleod-Ball ¶¶3, 5, 6 and Exhs. A, C-G, I-M. To the extent that the materials are non-specific as to audience and mention adjudication of stay motions, they do so in passing or address procedural issues related to processing of stay requests only, rather than providing training on substantive adjudication. *See* Macleod-Ball Decl. ¶¶6 and Exh. B, H. The agency has submitted a variety of detailed declarations in support of summary judgment, but these declarations are essentially silent as to the process by which Defendants searched for training materials on stay adjudication geared at immigration judges and BIA members (or, indeed, documents responsive to Category I of the Second Request in general). *See* Dkt. 35 ¶35. This is insufficient to meet Defendants' duties under the FOIA. *See Grand Central Partnership, Inc.*, 166 F.3d at 489 (requiring "relatively detailed" affidavits) (internal quotation omitted).

Furthermore, the agency productions in this case to date point to the likelihood that substantive training resources and materials geared towards judges and BIA board members who adjudicate these stay requests do exist. Defendants' productions to date include training manuals and power points directed at BIA paralegal and staff attorneys regarding the adjudicating of motions generally by the BIA, which include not only administrative and procedural guidance, but training on legal standards and other substantive issues. *See, e.g.*, Macleod-Ball Decl., Exh. C, L, M. Moreover, publicly available information reflects that the agency has likewise produced

12

both procedural and substantive training materials for those tasked with adjudicating other types of motions. *See, e.g.*, American Immigration Lawyers Association, *EOIR Releases Materials from the 2018 Legal Training Program for Immigration Judges* (Oct. 25, 2019), https://www.aila.org/infonet/eoir-2018-training-program-judges. Regulations task the BIA with, among other duties, providing for "appropriate training of Board members and staff on the conduct of their powers and duties." 8 C.F.R. § 1003.1(a)(2)(i)(B). The existence of substantive training materials and manuals directed at non-adjudicator staff and/or other types of motions strongly suggests that such materials are also produced for judges and BIA members, who decide stay motions.

A district court may order an agency to conduct additional searches when its searches are inadequate. *See, e.g., Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 112 (ordering new searches, including searches of archived records, with search terms agreed upon by both parties and certain custodians chosen by plaintiffs); *Morley v. CIA*, 508 F.3d 1108, 1119-20 (D.C. Cir. 2007) (ordering defendant agency to search particular records it had failed to search); *Int'l Counsel Bureau v. U.S. Dep't of Defense*, 657 F. Supp. 2d 33, 40 (D.D.C. 2009) (ordering an agency to re-conduct its search because its original search was inappropriately limited in scope). In addition, a court may order defendants to provide supplemental declarations where defendants have provided insufficient information or explanations, or there remains a factual dispute regarding aspects of their search. *See Morley*, 508 F.3d at 1121 (ordering supplemental explanation). Here, the evidence indicates that Defendants failed to conduct an adequate search for the relevant records, and so this Court should grant Plaintiffs' cross-motion for summary judgment and deny Defendants' motion.

13

**C.   DEFENDANTS FAILED TO CONDUCT AN ADEQUATE SEARCH FOR RECORDS REGARDING NON-EMERGENCY STAY REQUESTS RESPONSIVE TO PARAGRAPH 1, CATEGORY II OF THE SECOND REQUEST AND PARAGRAPH 1 OF FIRST REQUEST**

Plaintiffs also challenge the adequacy of Defendants search with regard to portions of their request for data related to non-emergency stays. *See supra* at Section II.B. Specifically, they seek an adequate search for records related to certain motions to stay removal filed between FY08 and FY18, including:

a. Whether the motion was treated as an "emergency" or "non-emergency" motion
for a stay of removal (as those terms are defined in BIA Practice Manual 6.4(d));
b. The date that the motion for a stay of removal was decided;
c. The number of days that elapsed between the date that the motion for a stay of removal was filed and the date of decision on the motion for a stay of removal;
d. Whether the motion for a stay of removal was granted or denied;
e. Whether the motion to reopen associated with the motion for a stay of removal was based on changed circumstances, as described in INA § 240(c)(7)(C)(ii), 8 C.F.R. § 1003.2(c)(3)(ii);
f. Whether the motion to reopen or motion for reconsideration was granted or denied; and
g. The date that the motion to reopen or motion for reconsideration was decided.

Dkt. 4-6 at 3; Dkt. 4-1 at 2. Defendants repeatedly acknowledge that their case management system, CASE, contains some information about some non-emergency stay requests. But Defendants provided no records responsive to Plaintiffs' request for data related to non-emergency stay requests. Instead, they argue, without basis, that their only means of responding to Plaintiffs' request is an incredibly time-intensive review of paper records. *See* Dkt. 31 at 25-27. This is both illogical and contrary to Defendants' obligations under FOIA. *See Nat'l Day Laborer Org. Network*, 877 F. Supp. at 96 ("[E]vidence that relevant records have not been released may shed light on whether the agency's search was indeed adequate.") (quoting *Weisberg*, 705 F.2d at 1351).

It is uncontroverted that Defendants enter information about some non-emergency stay requests into CASE, in the Comments field. *See, e.g.*, Dkt. 35 ¶22 (noting that some CASE Comment fields include notations regarding non-emergency stay requests); Dkt 32 ¶13 (same); *see also* Nash Decl. ¶9 (discussing information provided by FOIA officer). While they explain that this type of notation occurs infrequently and inconsistently, Defendants do not argue that these records are non-responsive to Plaintiffs' FOIA requests. Yet there is no indication that Defendants even attempted to search for or produce the records (i.e. the relevant portions of CASE records in which the Comments field includes information about a stay having been filed).

Nor have Defendants shown that producing these records would be overly burdensome. Defendants' brief suggests that it is not possible to produce the CASE records that reference non-emergency stays. *See* Dkt. 31 at 3 ("EOIR's Planning, Analysis and Statistics Division ('PASD') can use CASE to create certain reports from Tabs 1-7, utilizing the information from the standard, non-text fields for data entry, but cannot create a report from the Comments Tab given its ad hoc, free-form nature."). But the underlying evidence supporting this point addresses how PASD uses CASE to create certain types of reports and whether the Comments field can be used to generate them. Dkt. 34 ¶4 (discussing the use of CASE to create "certain reports . . . such as the Statistics Yearbooks and Workload and Adjudication Statistics commonly known as EOIR's 'Statistics Yearbooks'"). It does not address whether there are other report generating systems in Defendants' control, such as a COGNOS search or Progress Report modules, that could generate a responsive report. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.1990) (while agency need not search "every record system," it is, "at the very least . . . required to explain in its affidavit that no other record system was likely to produce responsive documents"); *Nation Magazine v. U.S. Customs Serv*., 71 F.3d 885, 892 (D.C. Cir. 1995) (finding that an agency must

provide "sufficient explanation as to why . . . a search would be unreasonably burdensome").

Nor does it address whether Defendants have attempted to search the Comments field for terms

related to stay requests, and then produce portions of relevant CASE files, even without a report.

It is unlikely that such steps would be overly burdensome, because Defendants themselves

repeatedly explain that their use of the Comments field for information related to non-emergency

stay requests is "infrequent." *See* Dkt. 35 ¶22; Dkt 32 ¶13. *See Bigwood v. U.S. Dep't of*

*Defense,* 132 F.Supp.3d 124, 135 (D.D.C. 2015) (noting that to sustain the adequacy of a search,

agency declarations must document, among other things, the search terms that were used in

conducting the search and that agency has "discretion in crafting a list of search terms that they

believe[] to be reasonably tailored to uncover documents responsive to the FOIA request")

(internal quotations omitted).

    Instead, Defendants suggest that their only option for responding to Plaintiffs' requests is

to collect and review nearly 83,000 paper records of proceeding. This is incorrect. The time-

intensive paper review may currently be the only method of review that would produce *all* of the

data related to non-emergency stay motions Plaintiffs requested. *See* Dkt. 31 at 30 ("With respect

to 'non-emergency' Motions to Stay Removal data, because the dates that these types of motions

are filed are simply not recorded in CASE by the BIA in any meaningful way (see Carr Decl. ¶

13), there would be no way to garner this information without a physical review of the 82,989

ROPs identified in the PASD Report."). But where Defendants may have a defense to producing

some portion of the responsive records in their control, that does not excuse them from

producing *any* responsive records. *See Nation Magazine*, 71 F.3d at 892 (requiring agency to

search for narrower subset of documents even after finding portion of a request overbroad); *Ray,*

502 U.S. at 173 (1991) ("[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of *any* requested documents.") (emphasis added).

From the initial stages of their request, Plaintiffs have expressed a willingness to narrow and clarify their requests in order to expedite the case. Defendants similarly should have an obligation to work with Plaintiffs to narrow requests where responding promptly to the request as written is not feasible. *See, e.g.*, 28 C.F.R. § 16.5(c) (requiring agencies to provide individuals "with an opportunity to modify" a request if the agency identifies "unusual circumstances" that will prolong the processing time of a FOIA request more than 10 working days after the 20 working day deadline).

Notably, Defendants' obligation to provide responsive documents on a more discrete scale than Plaintiffs' original request is at its zenith in cases like this one, where the difficulty of obtaining all responsive records is due to Defendants' practices. The FOIA statute requires agencies to "make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." 5 U.S.C. § 552(a)(3)(B). Defendants, who by their own account maintain their information regarding many non-emergency stays exclusively in individual paper files stored in multiple locations around the country and are unable to identify cases in which such stay requests have been filed absent a manual search of nearly 83,000 case files, have entirely failed in this obligation. *See Scudder v. Central Intelligence Agency*, 25 F.Supp.3d 19, 35 (D.D.C. 2014) (interpreting 5 U.S.C. § 552(a)(3)(B) as requiring an agency to "take affirmative steps to maintain its records in a form that would be readily reproducible in response to FOIA requests for 'any form or format.'").

Finally, Defendants' arguments regarding whether Plaintiffs' requests are overly burdensome or require creation of new records both relate *only* to the intensive search of paper

files that Defendants themselves envisioned. *See* Dkt. 31 at 25-31. Because Plaintiffs do not seek

such a search, the arguments are inapposite. Neither section of Defendants' argument addresses a

search for documents related to IJ/BIA member training or a search of the CASE database for

files in which the Comments field reflects that an individual filed a motion to stay.

For these reasons, requiring Defendants to search for and produce records from CASE in

which there is a notation regarding a stay in the Comment field is reasonable. Defendants have

failed to adequately search for records related to non-emergency stay requests. The Court should

deny Defendants' motion for summary judgment and grant Plaintiffs' cross-motion.

## V.    CONCLUSION

For the foregoing reasons, pursuant to Fed. R. Civ. P. 56, Plaintiffs' cross-motion for

summary judgment should be granted and Defendants' motion for summary judgment should be

denied.

Respectfully Submitted,

_s/ Claudia Valenzuela_
Claudia Valenzuela
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7540

Trina Realmuto
Kristin Macleod-Ball
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

Lindsay Nash
Kathryn O. Greenberg Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue, 11th Floor
New York, NY 10003
(212) 790-0433

Dated: August 15, 2019