UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :

AMERICAN IMMIGRATION COUNCIL and     :        19cv1835 (DLC)
KATHRYN O. GREENBERG IMMIGRATION    :
JUSTICE CLINIC AT THE BENJAMIN N.   :       OPINION AND ORDER
CARDOZO SCHOOL OF LAW,               :
                                          :
                        Plaintiffs,   :
                                          :
                  -v-               :
                                          :
EXECUTIVE OFFICE FOR IMMIGRATION    :
REVIEW and U.S. DEPARTMENT OF JUSTICE, :
                                          :
                      Defendants.   :
                                          :
---------------------------------------X

APPEARANCES:

For plaintiff American Immigration Council:
Claudia Valenzuela
American Immigration Council
1331 G Street NW, Ste. 200
Washington, D.C. 20005
(202) 507-7540

Trina A. Realmuto
Kristin Macleod-Bell
American Immigration Council
1318 Beacon St., Ste. 18
Brookline, MA 02446
(857) 305-3600

For plaintiff Kathryn O. Greenberg Immigration Justice Clinic at
the Benjamin N. Cardozo School of Law:
Lindsay Cotten Nash
55 Fifth Ave.
New York, NY 10003
(212) 790-0256

For defendants:
Joshua Evan Kahane
U.S. Attorney Office S.D.N.Y.

86 Chambers St.
New York, NY 10007
(212) 637-2699

DENISE COTE, District Judge:

On February 27, 2019, the American Immigration Council
("AIC") and Kathryn O. Greenberg Immigration Justice Clinic at
the Benjamin N. Cardozo School of Law (the "plaintiffs") filed
this action against the Executive Office for Immigration Reform
("EOIR") and the U.S. Department of Justice ("DOJ") (together,
the "Government") under the Freedom of Information Act ("FOIA")
to compel production of records relating to motions to stay
removal orders filed in connection with motions to reopen and
motions to reconsider.  Although the EOIR has produced documents
responsive to certain requests made by the plaintiffs, the
plaintiffs argue that the EOIR must also produce documents
pertaining to non-emergency motions to stay, as well as motion-
to-stay training materials for immigration judges and the Board
of Immigration Appeals ("BIA").  The parties have filed cross-
motions for summary judgment.  The Government's motion for
summary judgment is granted in part, as is that of the
plaintiffs.

## Background

The following facts are undisputed.  The EOIR is an office
within the DOJ that administers the U.S. immigration court

2

system.  The BIA is the administrative appellate body within the
EOIR.

Individuals subject to removal orders have a statutory
right to move to have their proceedings reopened or
reconsidered.  8 U.S.C. § 1229a(6), (7); 8 C.F.R. §§ 1003.2,
1003.23.  Such individuals also can move to stay their removal
pending the adjudication of their motions to reopen or motions
to reconsider.  8 C.F.R. § 1003.2(f).  Stays that are requested
pending the adjudication of a motion to reopen or motion to
reconsider may be granted on a discretionary basis.  Id.; see
also id. § 1003.6.

## I.   Adjudicating and tracking emergency and non-emergency motions to stay

The BIA designates discretionary motions to stay removal as
either "emergency" or "non-emergency."  A stay motion is
designated as "emergency" where removal is deemed imminent (i.e.
an individual is currently en route to the airport or border or
will be within the week).  Emergency stay motions are delivered
to the BIA for "prompt adjudication."  To ensure that emergency
stays are timely sent to the BIA for adjudication, a unit within
the EOIR called the Emergency Stay Unit ("ESU") maintains an
internal tracking log called the Emergency Stay Log ("ESL").
Among other things, the ESL tracks the number of emergency stay
motions that are granted and denied each fiscal year.  Starting
in fiscal year 2015, the ESU also began tracking emergency stay

motions through a case management software system called the Case Access System for EOIR ("CASE").  CASE is used to track relevant information from appeals, motions, and related documents submitted to the BIA.  The CASE user-interface features several non-text data fields, as well as a Comments tab that permits entry of free-form text.

In contrast to emergency motions to stay, non-emergency stay motions are adjudicated in the ordinary course of business by the BIA.  In practice, this means that the BIA typically adjudicates the underlying matter, such as a motion to reopen or to reconsider, which renders moot an accompanying motion to stay.  Non-emergency motions to stay are not tracked, aside from an "infrequent notation" in the Comments tab of CASE.  Such a notation is not a "routine practice."

To the extent a non-emergency motion to stay filed in connection with a motion to reopen or to reconsider is filed with the BIA, a hard copy record of the motion to stay remains in an individual's hard copy Record of Proceedings ("ROP").  The ROP may be located in one of three locations: (1) within one or more of 18 Federal Records Centers; (2) within the 62 Immigrations Courts and/or Immigration Adjudication Centers; or (3) within EOIR Headquarters.

## II.   **The FOIA request**

On July 17, 2018, the plaintiffs submitted a FOIA request to the EOIR.  This request sought records that reflect certain data related to both emergency and non-emergency motions to stay removal filed with motions to reopen or motions to reconsider in fiscal years 2015 through 2018.

Following receipt of the FOIA request, the EOIR explained to the plaintiffs that it does not track non-emergency motions to stay but that it could provide data on emergency motions to stay that are tracked in the ESL.  On September 7, 2018, the EOIR responded to the plaintiffs' request with a partial grant/partial denial of their FOIA request.  The EOIR's response provided an Excel spreadsheet that contained certain data related to emergency stays of removal maintained by the ESU, but did not include any data related to non-emergency stay motions.

On November 19, 2018, the plaintiffs submitted a second FOIA request to the EOIR.  This request sought the same data as the prior request, but for fiscal years 2008 through 2014.  This request also sought records reflecting EOIR policies and procedures for processing and tracking motions to stay, training materials for EOIR staff and judges in the immigrations courts and BIA, and a random sample of written decisions denying and granting motions to stay.

On November 21, 2018, the EOIR acknowledged receipt of the plaintiffs' second request.  Before receiving a response to their request, the plaintiffs commenced this lawsuit on February 27, 2019.

Since the filing of the complaint, the EOIR has made seven productions responsive to the second FOIA request, as well as one additional production responsive to the first FOIA request.[1] The EOIR has produced some documents responsive to the requests concerning the policies and procedures for processing and tracking motions to stay filed in connection with motions to reopen or to reconsider.  The EOIR has also produced documents responsive to the request for a random sample of written decisions denying and granting motions to stay.  Additionally, the EOIR has produced documents responsive to the request for information about emergency motions to stay.

The parties agree that only two categories of records remain the subject of this litigation.  The first category of

_____

[1] The plaintiffs filed an administrative appeal of their first FOIA request, which was denied on February 14, 2019.  The plaintiffs did not file an administrative appeal of their second FOIA request.  Although exhaustion of administrative remedies is generally required prior to initiating a FOIA lawsuit, exhaustion is a prudential consideration, not a jurisdictional prerequisite.  Elec. Privacy Info. Ctr. v. IRS, 910 F.3d 1232, 1238 (D.C. Cir. 2018).  The EOIR does not argue that the plaintiffs have failed to exhaust their administrative remedies with respect to the second FOIA request.  Any exhaustion argument thus is waived.

records relates to non-emergency stays for fiscal years 2008 through 2018.  For "each motion for a stay of removal" where an individual either "(1) already ha[d] a pending motion to reopen or motion for reconsideration or (2) filed a motion for a stay concurrently with the filing of the motion to reopen or motion for reconsideration," the plaintiffs seek the following information:

    a. Whether the motion was treated as an 'emergency' or 'non-emergency' motion for a stay of removal (as those terms are defined in BIA Practice Manual 6.4(d));

    b. The date that the motion for a stay of removal was decided;

    c. The number of days that elapsed between the date that the motion for a stay of removal was filed and the date of decision on the motion for a stay of removal;

    d. Whether the motion for a stay of removal was granted or denied;

    e. Whether the motion to reopen associated with the motion for a stay of removal was based on changed circumstances, as described in INA § 240(c)(7)(C)(ii), 8 C.F.R. § 1003.2(c)(3)(ii);

    f. Whether the motion to reopen or motion for reconsideration was granted or denied; and

    g. The date that the motion to reopen or motion for reconsideration was denied.

The plaintiffs have clarified that their "challenge to the adequacy of [the EOIR's] search for non-emergency stay records is limited to [the EOIR's] failure to search for information in CASE -- specifically in which the CASE Comments field mentions a stay or stay request."

The second category of records still in dispute is the following: "[t]raining resources, materials, and modules for . . . judges in Immigration Courts and the BIA relating to the processing, and adjudication of motions for a stay of removal." The plaintiffs have clarified that they do not seek "materials for court staff or relating to motions to reopen or to reconsider." These materials already have been produced to the plaintiffs by the EOIR.

On July 19, 2019, the EOIR moved for summary judgment. On August 14, the plaintiffs opposed the EOIR's motion and cross moved for summary judgment. The motions were fully submitted on September 23.

## Discussion

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). "To show that a search is adequate, [an] agency affidavit must be relatively detailed and nonconclusory, and submitted in good faith." N.Y. Times Co. v. U.S. Dep't of Justice, 756 F.3d 100, 124 (2d Cir. 2014) (citation omitted). It is presumed that agency affidavits are submitted in good faith. Carney, 19 F.3d at 812. "This presumption cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."

Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) (citation omitted).

"[W]hen a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." Id. (citation omitted). "[A] search is not inadequate merely because it does not identify all responsive records." N.Y. Times Co., 756 F.3d at 124. "The adequacy of a search is not measured by its results, but rather by its method." Id.

Further, when a "request demands all agency records on a given subject[,] . . . the agency is obliged to pursue any clear and certain lead [that] it cannot in good faith ignore." Halpern v. FBI, 181 F.3d 279, 288 (2d Cir. 1999) (citation omitted). "But, an agency need not conduct a search that plainly is unduly burdensome." Id. There is "no doubt that there is such a thing as a request that calls for an unreasonably burdensome search." Ruotolo v. Dep't of Justice, 53 F.3d 4, 9 (2d Cir. 1995).

## I. Non-emergency stay records in CASE

The EOIR has sustained its burden to prove the adequacy of its search with respect to the information the plaintiffs requested regarding non-emergency stay motions. The EOIR has

explained that its only records responsive to the request for
information regarding non-emergency motions to stay are kept in
hard copy ROPs, which are located in over eighty locations.  To
find records responsive to the request for information about
non-emergency motions to stay, the EOIR would be required to
search 82,989 individual ROPs in those locations.  At this point
in the litigation, the plaintiffs do not request that the EOIR
undertake this burdensome task.

Instead, the plaintiffs request that the EOIR search CASE
for information responsive to their request.  But, as stated in
numerous declarations submitted by the agency, non-emergency
stays are not tracked in CASE.  Although the Comments tab in
CASE may contain a "notation," notations are "infrequent" and
"not a routine practice."  As further explained in an agency
declaration, the information sought by the plaintiffs with
respect to non-emergency stays -- dates the motions to stay and
underlying motions to reopen or motions to reconsider were filed
and decided, the outcomes of those motions, and whether changed
circumstances formed the basis of those outcomes -- would not be
recorded in the Comments tab in CASE.  Thus, a search of CASE
for records pertaining to non-emergency stay motions would not
uncover records responsive to the plaintiffs' request.

The plaintiffs' arguments to the contrary are not
persuasive.  The plaintiffs argue that the information they

request is an "agency record" for the purposes of FOIA.  While
this may be true, this argument fails to grapple with either the
burden of the plaintiffs' request or the unavailability of the
requested information in CASE.  The EOIR has not argued that the
information requested by the plaintiffs would not constitute
agency records.  Instead, it has explained that CASE does not
house the types of filings that would appear in an individual's
hard copy ROP.  While the filings within the ROP could contain
information responsive to the plaintiffs' request, the
plaintiffs, likely recognizing the burden of searching these
hard copy files, no longer request that the EOIR's search
encompass these filings.  The EOIR's acknowledgment that a
"notation" may sometimes be made in the Comments tab of CASE
says nothing about the type of information the notation would
include.  The EOIR need not search CASE for records that are not
reasonably calculated to discover the information sought by the
plaintiffs' FOIA request.

## II.   Training materials for immigration court judges and the BIA related to motions to stay

The EOIR has not sustained its burden to prove that it has
adequately searched its records for "[t]raining resources,
materials, and modules for . . . judges in Immigration Courts
and the BIA relating to the processing, and adjudication of
motions for a stay of removal."  In the declarations submitted

11

by the EOIR, scant attention is paid to the EOIR's method for
searching its records for this category of documents.  The only
declaration that discusses this category of records states that
one "Program Office" was tasked with conducting "a search for
responsive records to Plaintiffs' Second Request."  The EOIR
also provided the email by which it directed the search.  In
relevant part, the email states:  "We received a FOIA request
[for] . . . [BIA] Policies, procedures and training materials
related to tracking of stay of removals."  The email attaches
the plaintiffs' second FOIA request.  While this information
establishes that a "Program Office" was tasked with fulfilling
the plaintiffs' FOIA request, it says nothing of what steps the
Program Office took to comply with the request.  The agency's
declaration is neither "relatively detailed" nor
"nonconclusory."  N.Y. Times Co., 756 F.3d at 124 (citation
omitted).  The EOIR therefore has not sustained its burden to
prove that its search was adequate.

The EOIR argues that it has sustained its burden to prove
that its search was adequate because the plaintiffs only
"speculate" that more materials exist based on the records that
the EOIR has already produced.  The EOIR further argues that the
plaintiffs incorrectly rely on the "results" rather than the
methods of its search in arguing that the search was inadequate.
The EOIR is correct that the adequacy of an agency's search is

12

measured by its methods, not its results.  The problem here is just that.  Short of stating who it asked to search for responsive records, the EOIR has not explained how, i.e. by what method, those searches were undertaken.

The EOIR next argues that it has met its burden because it has submitted declarations that describe its search method and that these declarations are entitled to a presumption of good faith.  While a good faith presumption does attach to the EOIR's declarations, that has no bearing on whether the affidavits adequately describe the agency's method of search.  As discussed, here the declarations do not for this remaining category of documents.  In arguing to the contrary, the EOIR cites portions of declarations that discuss the EOIR's method for searching records pertaining to other parts of the plaintiffs' FOIA request, not the plaintiffs' request regarding training materials for the BIA and immigration judges adjudicating motions to stay.  The discussion of the EOIR's search of other records does not bear on whether the EOIR's search of the records in question was adequate.

Finally, the EOIR argues that its search was adequate because it asked the BIA to search for responsive records.  That may be true.  Nonetheless, the EOIR must describe in a "relatively detailed and nonconclusory" manner the method by which the BIA searched its records to respond to the plaintiffs'

13

request.  <u>N.Y. Times Co.</u>, 756 F.3d at 124 (citation omitted). Because the EOIR has failed to do so, it has not sustained its burden to show that its search was adequate.

### <u>Conclusion</u>

The Government's July 19, 2019 motion for summary judgment is granted in part.  The plaintiffs' August 14 motion for summary judgment is granted in part.


Dated:    New York, New York
          November 15, 2019

                        _____
                             DENISE COTE
                    United States District Judge